1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| ROBERT L. PARKER, Ph.D., an individual,<br><br>             Plaintiff,<br><br>v.<br><br>VINCE DEGUITO, an individual; JONATHAN BECERRA, an individual; CARRIE HOGAN, an individual,<br><br>             Defendant. | Case No.:  20cv00661-LL-JLB<br><br>**ORDER:**<br><br>**1.  GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br><br>**2.  OVERRULING BOTH PARTIES' EVIDENTIARY OBJECTIONS; and**<br><br>**3.  GRANTING REQUESTS FOR JUDICIAL NOTICE**<br><br>**[ECF Nos. 30]** |

20

## I.    INTRODUCTION

21
22
23
24
25

Plaintiff Robert L. Parker, Ph.D., an individual ("Plaintiff"), appearing *pro se*[1], brings this civil rights action against Defendants Vince Deguito, an individual ("Sergeant Deguito"); Jonathan Becerra, an individual ("Detective Becerra"); and Carrie Hogan, an individual ("Officer Hogan") (collectively, "Defendants"), who are all current or former officers of the San Diego State University Police Department ("SDSUPD").

26
27
28

---

[1] In reviewing the instant motion, the Court is mindful that "[a] document filed *pro se* is to be liberally construed … and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

Before the Court is Defendants' Motion for Summary Judgment ("Motion").  ECF No. 30.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 46. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Defendants' Motion because no genuine issue of material fact exists as to whether Plaintiff's Fourth Amendment rights were violated, meaning Defendant is entitled to summary judgment in its favor as to all of his claims.  The Court also **OVERRULES** both parties' evidentiary objections but **GRANTS** Defendant's Request for Judicial Notice.

## II.   BACKGROUND

### A.   Statement of Facts[2]

On March 4, 2019, at approximately 7:00 p.m., Plaintiff, a 6"4, 221-pound male, alleges that he began exercising in the San Diego State University ("SDSU") Aztec Recreation Center (the "ARC").  Complaint, ECF No. 1 ("Compl.") at 2,[3] ¶ 11; *see also* Plaintiff's Deposition, ECF No. 30-1 ("Pltff. Dep.") at 22:22-25.  Around 7:30 p.m., he began using an unoccupied treadmill and noticed a small white towel in the treadmill's cup holder.  Compl. at 3, ¶ 13.  Shortly after he started using the treadmill, Plaintiff noticed an

---

2 The majority of the facts set forth are taken from the operative complaint, or the facts provided in the parties' briefs, which the opposing party did not dispute.  For purposes of ruling on Defendants' motion for summary judgment, the Court liberally construes all allegations in favor of Plaintiff as the non-moving party.  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), *cert. denied sub nom. Browder v. Nehad*, 141 S. Ct. 235 (2020). The remaining facts relied upon consist of facts taken from the declarations submitted in support of the pending motions, which the Court found credible and unrebutted by the evidence as well as the audio recording lodged by Plaintiff in this case.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that the Court of Appeals should not have relied on the defendant's "version of events," which was "so utterly discredited by the record that no reasonable jury could have believed him," but instead, "should have viewed the facts in the light depicted by the videotape").

3 Unless otherwise indicated, all page number references are to the CM/ECF-generated page number electronically stamped in the header of each CM/ECF-filed document.

adult male, Joseph Dolan, who told him the white towel was his and meant to reserve the treadmill for him.  *Id.*; *see also* Plaintiff's Opposition, ECF No. 32 ("Oppo.") at 7:14-20. However, Plaintiff alleges that because the ARC has a policy of forbidding people from "reserving" exercise equipment in such a manner, he continued exercising on the treadmill. *Id.* at 3, ¶¶ 15-16.  Plaintiff pleads that Dolan began yelling, turned off Plaintiff's treadmill, removed Plaintiff's headphones from the treadmill's sound system, and "verbally berated" Plaintiff.  *Id.* at 3-4, ¶ 16; Oppo. at 7:14-20.  Although Plaintiff disputes being involved in any altercation, Plaintiff "was reported to [have] be[en] in a physical and verbal altercation with another patron in the cardio room over a treadmill."  Evidence in Support of Oppo., ECF No. 33, Confidential Police Report of Carrie Hogan [4] ("Hogan Report"), at 109.

### 1.   *The First Call to Campus Police*

At 7:32 p.m., ARC staff called to report the altercation between Plaintiff and Dolan, and Detective Becerra arrived to address it.  Compl. at 4, ¶ 17; Declaration of Jonathan Becerra at 30-1 ("Becerra Decl.") at 8, ¶ 2; Defendants' Motion for Summary Judgment,

---

[4] Although law enforcement reports are hearsay, "[d]istrict courts should admit such law-enforcement reports, if at all, only under the public-records exception contained in Federal Rule of Evidence 803(8)."  *Lang v. Cullen*, 725 F. Supp. 2d 925, 960 (C.D. Cal. 2010) (quoting *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000).  Rule 803(8)(B) permits the admission of "reports … in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." Fed. R. Evid. 803(8)(B). "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not." *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983).  Applying these rules, to the extent the police reports record Defendants' out-of-court statements and/or observations, they are admissible.  *See Colvin v. United States*, 479 F. Supp. 2d 998, 1003 (9th Cir. 1973) ("Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay[ ] and inadmissible[.]").  As for the statements of third-parties in the report, at summary judgment, the Court may also consider hearsay statements so long as the declarant could provide such testimony based on personal knowledge at trial.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

ECF No. 30 ("Mot.") at 11:5-6.

Taylor Leveron ("Leveron"), an ARC front desk staff member, did not witness the fight but heard there was a fight over a treadmill while she was on break.  Evidence in Support of Oppo., ECF No. 33, Supplement 3 to Confidential Police Report ("Suppl. Report") at 114; Hogan Report at 110; Evidence in Support of Oppo., ECF No. 33, Confidential Police Report of Jonathan Becerra ("Becerra Report") at 112.  When she arrived at the scene of the altercation, she saw another staff member, standing in between Plaintiff and Dolan.  Suppl. Report at 114.  She instructed Plaintiff to step way, but he "said he absolutely would not." *Id.*  Dolan also refused to step away from Plaintiff.  *Id.* Eventually, Leveron and Plaintiff went into a hallway where she states Plaintiff yelled at her, and she told him if he was not willing to talk to her, he would need to leave for the night.  *Id.*  She followed Plaintiff out of the building.  *Id.*; *see also* Becerra Report at 113; Compl. at 4, ¶ 17.  She also told SDSUPD that she spoke with Dolan, who told her that he did not argue with Plaintiff, but Plaintiff "punched him randomly in the face." Suppl. Report at 114; Becerra Report at 113.  However, Dolan refused medics, did not want to file a police report, and left the gym.  Becerra Report at 113.

Because Plaintiff had left the gym, when Detective Becerra arrived, he cleared the call and left.  Becerra Decl. at 9, ¶ 2; Mot. at 11:6-10.

### 2.    *The Second Call to Campus Police*

Approximately fifteen minutes after first leaving the gym, Plaintiff returned to continue his workout.  Compl. at 4, ¶ 17; Suppl. Report at 114; Becerra Report at 113. Upon re-starting his workout, Plaintiff pleads that he attracted the attention of an ARC staff member, intending to display peaceful intentions that all was well.  *Id.* at 4, ¶ 18.  He believed the incident had been misinterpreted, suspected the police would be summoned again, and Plaintiff would be falsely accused, so he walked slowly toward the front lobby. Compl. at 4, ¶ 19; Oppo. at 8:2-5.  Leveron, on the other hand, states she asked to speak with Plaintiff, but he told her "let's deal with this outside" and would "only handle this outside."  Suppl. Report at 114; Hogan Report at 110; Becerra Report at 113; Mot. at 11:11-

4

19; Becerra Decl. at 9, ¶ 3; Declaration of Carrie Hogan, ECF No. 30-1 ("Hogan Decl.") at 5, ¶ 2.  Leveron told Plaintiff for the second time that night that he was not to come inside the ARC, but Plaintiff told her it was his right.  Suppl. Report at 114.  While Leveron spoke with Plaintiff, another ARC employee, Tom Jimenez, pressed the panic alarm button. *Id.*  At 7:54 p.m., Leveron, who interpreted Plaintiff asking her to go outside as a threat, also triggered the panic alarm and called the campus security officers a second time.  *Id.*; *see also* Mot. at 11:11-19; Becerra Decl. at 9, ¶ 3; Compl. at 4, ¶ 19; Hogan Decl. at 5, ¶ 2.

While at the gym exit,[5] Plaintiff was met by Officer Hogan, a 5"7, 140-pound female, who arrived to investigate the earlier reports of a physical altercation.  Hogan Decl. at 5, ¶ 4; Compl. at 4, ¶ 20; Mot. at 12:14.  Before Officer Hogan could question Leveron, Plaintiff approached Officer Hogan, making eye contact with her while starting the audio recorder on his phone.  Oppo. at 8:6-7; Mot. at 11:20-24.  Plaintiff states that he stopped about six feet from her when Officer Hogan swept her arm rightward, motioning to the path beside her that led to the exit.  Oppo. at 8, ¶¶ 2-3 (citing Pltff. Decl. at 6, ¶ 8).  At this point in time, Plaintiff understood he was free to leave.  *Id.*  However, he approached Hogan, and they had the following conversation:

Plaintiff:   I just finished my workout.  I'm recording you.  What do you want to talk about?

Hogan:   I'm trying to figure out what's going on.  I was called here because there was a fight.

Plaintiff:   Okay.  I'm asserting my Fifth Amendment rights to not speak.

Hogan:   Well … well, what's going on?  Are you—

Plaintiff:   I assert my Fifth Amendment right to not talk.  Do you not

---

[5] The parties dispute whether (1) Plaintiff approached Officer Hogan, who was not talking to anyone at the time, *see* Compl. at 4, ¶ 20; Oppo. at 8:19-23, or (2) when Officer Hogan arrived, Leveron waved her down and told her that Plaintiff, who she identified as the man walking towards the front desk, had been involved in the earlier altercation, returned, and was now causing a second disturbance, *see* Hogan Report at 109; Suppl. Report at 114.  In the former, a witness interview was not interrupted, but in the latter scenario, Plaintiff interrupted, or "obstructed" a witness interview.  Liberally construing the facts in Plaintiff's favor, the Court adopts his version.  *Browder*, 929 F.3d at 1132.

|  |  |  |
|---|---|---|
| | | understand that?  That means you can't question me any further. |
| | Hogan: | Yes, I can because you are not under arrest, sir.  You're being detained[6] … because I don't know what's going on. |
| | Plaintiff: | I assert my Fifth Amendment right not to speak. |
| | Hogan: | Okay.  We'll stand by for a minute.  We'll wait for my partner, and we'll go from there. |
| | Plaintiff: | I'm not being detained am I? |

*See* Pltff. Decl at 5, ¶ 3 (providing a copy of the audio file[7] in support of his declaration in opposition to Defendants' motion); *see also* Audio File at 0:32-1:01; *see also* Oppo. at 8:24-9:25, 11:24-12:13:6 (describing the same encounter).[8]  Around this point in the conversation, Plaintiff asserted that he was not being detained and started to leave for the first time. Mot. at 12:9-10; Oppo. at 9:19.  Officer Hogan responded to Plaintiff's inquiry about whether he was being detained by stating, "Yes, you are [being detained].  Stop. Back up." Audio File at 1:01-1:02.  The conversation continued as follows:

|  |  |  |
|---|---|---|
| | Plaintiff: | I'm being detained?  Am I being detained…For what reason am I being detained. |
| | Hogan: | Because I'm doing an investigation.[9] |
| | Plaintiff: | For what reason… |

---

[6] Plaintiff denies hearing that he was being detained.  Oppo. at 9:13-15.

[7] For the remainder of this order, the Court will refer to the audio file, which was lodged with the Court as ECF No. 40, as "Audio File."  Plaintiff also lodged a copy of the transcript with the Court.  *See* ECF No. 33 at 115-131.  The Court notes that there are minor differences between the audio file and transcript that Plaintiff lodged in support of his opposition.  However, the Court relies on the Audio File as the best evidence of the incident.

[8] The Court takes judicial notice of the recording of the conversation and interactions between Plaintiff and Defendants.  *See* Fed. R. Evid. 201(b)(1)-(2); *see also Scott*, 550 U.S. at 380-81.  Plaintiff objects to the Court taking judicial notice of the sound and tone of his voice even though he himself provided the recording to the Court.  *See* ECF No. 32 at 4, ¶ 1.  However, the Court finds that not just the substance of what Plaintiff said but also the way he said (*e.g.*, his tone of voice and whether it changed throughout the conversation) is highly relevant to the Court determining whether probable cause supported his arrest.

[9] Plaintiff believes conducting an investigation was not valid reason to detain him.  Oppo. at 9:26-10:1.

| | |
|---|---|
| Hogan: | Back up.[10] |
| Plaintiff: | For what lack of compliance with the law am I being detained?  I took a step back.  For what lack of the law am I being detained? |
| Hogan: | Because you were in a physical fight with someone.  I'm trying to figure out who… |
| Plaintiff: | There was no physical fight. |
| Hogan: | I don't know that.  I was called— |
| Plaintiff: | [to Leveron] Did you think there was a physical fight? |
| Leveron: | I was told by multiple people there was. |
| Plaintiff: | Was there a fight?  I'm asserting my Fifth Amendment right not to speak … Am I being detained? |
| Hogan: | Yes, you are being detained.  I told you that sir. |
| Plaintiff: | Okay, I'm being detained for no reason—for some reason somebody says I'm being detained. |
| Hogan: | Do you want to tell me what's going on, so I can un-detain you? |
| Plaintiff: | [Raising voice] I already asserted my Fifth Amendment right.  You may no longer question me. |
| Hogan: | You are not under arrest. |
| Plaintiff: | It doesn't matter. |
| …. | |
| Hogan: | Sir, it doesn't apply to *Miranda*, okay, so you're not understanding what it means. |
| Plaintiff: | I assert my right to remain silent. |
| Hogan: | We'll just wait for my partner.  We'll figure out what's going on. |
| Plaintiff: | Am I being detained? |
| Hogan: | Yes, you are. |
| … | |
| Plaintiff: | Why am I being detained?[11] |

---

[10] Officer Hogan stated in her declaration that she asked Plaintiff to back up because he "took an aggressive step toward me, leaned over me, and asked why he was being detained."  Hogan Decl. at 5, ¶ 4; Hogan Report at 109.  She stated that "[b]ased on [her] training and experience[,] [she] felt [Plaintiff] was taking a fighting stance with [her]."  Hogan Report at 109.  Plaintiff argues that, in fact, he did not take a step towards Officer Hogan but rather as he reversed direction when Officer Hogan told him he could not leave, Officer Hogan "took a shifting half-step back" and "was the one who closed the distance on [Plaintiff] as [he] tried to leave."  Oppo. at 10:2-8.

[11]     Plaintiff states he continually asked why he was being despite, despite having

Hogan:        Because I was called her for a physical fight, and that's a
              crime.

Audio File at 1:02-2:22; *see also* Oppo. at 9:26-12:13:6 (describing the same encounter). Plaintiff states that at this time, "[t]o demonstrate that he was not truly free to leave, [he] took two slow and deliberate steps to the side and said 'I'm going to leave unless you say I'm being detained,'" to which Officer Hogan responded by stating, "You are not allowed to leave." Oppo. at 12:19-22. This was the second time Plaintiff tried to leave while Officer Hogan was investigating.

Approximately two minutes and forty seconds into Plaintiff's recording, Officers Deguito and Becerra arrived, and Officer Hogan informed them that Plaintiff was refusing to talk to her, she had told him many times that he was being detained, and she asked Officer Becerra to standby with Plaintiff while she investigated. Audio File at 2:22-2:58; Mot. at 13:4-10, 14:4-8; Oppo. at 12: 23-26. At that point, Officer Becerra asked Plaintiff for identification, and Plaintiff informed the officer that he had asserted his Fifth Amendment right to remain silent. Mot. at 14:9-10; Audio File at 2:40-2:50.

While Officers Becerra and Deguito spoke with Plaintiff, Officer Hogan continued her investigation, and three accounts indicated a physical altercation involving Plaintiff had occurred. Mot. at 13:11-21. First, Leveron told Hogan that it had been reported to her that two ARC members had gotten into an argument over use of the treadmill, and the argument led to a physical fight. Mot. at 13:11-13; Hogan Decl. at 5, ¶ 3; Suppl. Report at 114. Second, Leveron also informed Hogan that Dolan himself had "said that [Plaintiff] punched him." Mot. at 13:14; Hogan Decl. at 6, ¶ 7; Suppl. Report at 114. Third, an eyewitness, who refused to identify herself, told Hogan that Plaintiff slapped Dolan after Dolan pushed Plaintiff. Mot. at 13:14-16; Hogan Decl. at 6, ¶ 7. Officer Hogan was unable to reach Dolan, who had not made a formal report. *Id.* Officer Hogan states that while she was interviewing Leveron, Plaintiff "was yelling at the two officers the entire time and refused

---

received an answer, because he "was not satisfied with Hogan's reason for detaining him." Oppo. at 12:12-13.

to give them his name." Hogan Report at 110.  She stated that by the time she returned, she "had been attempting to investigate for approximately 20 minutes." *Id.* at 110.

While Hogan was investigating, Plaintiff's converstion with Officers Becerra and Sergeant Deguito transpired as follows:

| | |
|---|---|
| Becerra: | Okay.  There's no need to speak if you have ID.  Do you have ID on you? |
| Plaintiff: | I have asserted my right to remain silent. |
| Becerra: | Okay.  You can remain silent.  Do you have ID on you? |
| Plaintiff: | If you want my ID, you need to assert a reason for you to detain me that you need to check my ID. |
| Deguito: | You're causing a disturbance. |
| Becerra: | 415[12]— |
| …. | |
| Becerra: | Okay.  That's great.  We'll get your name and all that good information—because we got word that you were causing a disturbance with another individual, which turned physical, and if that's the case, there could be some assault charges in there, too. |
| Plaintiff: | Well, you go ahead with that. |
| Becerra: | Is that good enough for an arrest or a detention, if need be? |
| Plaintiff: | Except that there wasn't any. |
| Becerra: | Well, that's what we're determining right now. |
| Deguito: | If you're not gonna tell us— |
| Becerra: | Do you understand that?  All right. |
| Deguito: | —we're not gonna know.  All right?  If you're gonna play this Fifth Amendment game, we're not gonna know information— |
| Plaintiff: | It's a game? |
| Deguito: | Yes. |
| Plaintiff: | It's actually quite established— |
| Deguito: | We're trying to get |
| Plaintiff: | —as a very valuable right in the United States of America. |
| Deguito: | If you're not gonna cooperate with us, then it's gonna be a bigger problem. |
| Becerra: | [Unintelligible] |

---

[12]    The California Penal Code provision cited makes it a misdemeanor to, *inter alia*, "unlawfully fight[ ] in a public place or challenge[ ] another person in a public place to fight."  Cal. Penal Code § 415(1).

9

| | | |
|---|---|---|
| Plaintiff: | I'm not going to tell you a name unless you state to me that I'm required to give you my name. |
| Becerra: | You're detained under 415 of the Penal Code for causing a disturbance.  Okay? |
| Plaintiff: | Am I— |
| Becerra: | We're investigating the disturbance to see if it's gonna lead to an arrest, or if there's any criminal action that needs to be taken right now.  Do you understand? |
| Plaintiff: | You— |
| Becerra: | So now that we're investigating, I need to know who you are. |
| Plaintiff: | I need to know who you are first. |
| Becerra: | —in this establishment.   I'm Office—I'm Detective Jonathan Becerra with the San Diego State University Police Department. |

….

| | |
|---|---|
| Plaintiff: | Am I required to give you my name? |
| Becerra: | Yes, you're detained right now, so, yes, you are. |
| Deguito: | If you don't, it's going to be 148,[13] another charge. |
| Becerra: | You do understand you're obstructing right now? |
| Plaintiff: | Say that again? |
| Deguito: | You're gonna get charged with 148, delaying and obstructing, another charge. |
| Plaintiff: | Am I required to give you my name? |
| Becerra: | Yes. |
| Deguito: | You'll be under arrest. |
| Plaintiff: | My name— |
| Becerra: | 148 of the Penal Code.  Let's go. |
| Plaintiff: | My name is Robert Parker.  I am a member here. |
| Becerra: | Look, boss, I don't know why you're giving us a hard time. We got the call.  We don't know—listen to me |
| Plaintiff: | They're giving me a hard time. |
| Becerra: | —do you understand? |
| Plaintiff: | [Raising voice] Don't you— |
| Becerra: | Do you understand— |

---

[13] "Every person who willfully resists, delays, or obstructs any public officer, peace officer, … in the … attempt to discharge any duty of his or her … employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both."  Cal. Penal Code § 148(a)(1).

10

| | | |
|---|---|---|
| Plaintiff: | Don't you put your f-ing do not—[yelling] do not approach me![14]  Do not approach me! |
| Becerra: | [laughs] Do you understand |
| Deguito: | You're being recorded. |
| Becerra: | Do you understand that you— |
| Deguito: | We can take this to the judge. |
| Becerra: | that you invoked your Fifth Amendment, which is the right to remain silent, but yet you're talking over me? |
| Plaintiff: | When I assert my right to remain silent, it doesn't matter if I talk. |
| …. | |
| Becerra: | If you raise your voice again, you're going into handcuffs. Do you understand that? |
| Plaintiff: | I don't understand anything. |
| …. | |
| Plaintiff: | I did not cause a disturbance. |
| Becerra: | —and we know it went physical. |
| Plaintiff: | Another member caused a disturbance. |
| Becerra: | So if you get physical with me |
| Plaintiff: | I will not get physical with you.  Let me be very clear.  I will not get physical with you. |
| Becerra: | Okay.  So now if you invoked your Fifth Amendment right like you said you wanted to— |
| Plaintiff: | Yes. |
| Becerra: | —and I'm gonna ask the questions.  How's that?  Fair enough.  See how easy that is, Robert?  All we're trying to |

---

[14] The parties agree Becerra raised his pointing finger in an escalating action and advanced toward Plaintiff. Compl. at 5, ¶ 22; Mot. at 15:2-3; Oppo. at 16:4-6.  Detective Becerra testified he pointed his finger at Plaintiff "to direct [his] conversation to [Plaintiff]" because "there [were] various people talking."  Becerra Dep. at 64:11-18; Becerra Report at 112.  Plaintiff states this pointing caused him to fear physical harm and react emotionally.  Compl. at 5, ¶ 22; Oppo. at 16:5-16; Becerra Report at 112.  Detective Becerra states that in response to the pointing, Plaintiff "became hysterical, backed away from [him] and screamed to not point a finger at him and to get back."  Mot. at 15:3-4; Becerra Report at 112.  The parties also agree that Officers Becerra and Dequito laughed at Plaintiff's outburst. Compl. at 5, ¶ 22; Oppo. at 16:19-20.  Detective Becerra admitted to laughing because he believed Plaintiff accused Becerra of pushing him, and "[t]he body worn camera [was] on[,] and [Plaintiff was] accusing [him] of something that's clearly caught on tape that [he] wasn't doing."  March 4, 2021 Deposition of Jonathan Becerra, ECF No. 33 ("Becerra Dep.") at 64:22-25.

11

| | | |
|---|---|---|
| | | do is figure what happened. That's it. That's all it is, man. What's your last name, Robert? |
| | Plaintiff: | I have already stated my first and last name. I am done. |
| | Becerra: | Okay. Well, I missed it because you were— |
| | Plaintiff: | I assert my right to remain silent. |
| | Becerra: | —you were talking over me when I was trying to get the information. What's your name? |
| | Plaintiff: | I asserted my right to remain silent. |
| | Deguito: | Did he not give you his name? |
| | Becerra: | Nope. |
| | Deguito: | Then arrest him. |
| | Plaintiff: | My name— |
| | Becerra: | Too late, Robert. You had plenty of opportunities. |
| | Plaintiff: | No, it's not too late. My name is Robert, P-A-R-K-E-R. |
| | …. | |
| | Deguito: | Just one more time and you're under arrest. |
| | Becerra: | You do understand that they can revoke your membership? |
| | …. | |
| | Becerra: | So, all you gotta do is cooperate. Easy enough. Robert, one more time, last name. |
| | Plaintiff: | P – |
| | Deguito: | [Unintelligible] 415. |
| | Plaintiff: | A-R-K-E-R. |
| | Becerra: | What's your date of birth, Robert? |
| | Plaintiff: | Am I required to give you my date of birth? |
| | Deguito: | Yes! |
| | Unidentified Speaker: | You are. |
| | Becerra: | All right. We're done. |
| | Deguito: | Arrest him.[15] |
| | Plaintiff: | Am I required to give you my date of birth, and I will. |
| | Deguito: | Walk him out. |
| | Plaintiff: | I will give you my date of birth. |
| | Becerra: | Turn around, Robert. Robert, you have to let go of this stuff, so we can place handcuffs on you. Let go.[16] |

---

[15] At this point, which was 6:54 minutes into the recording, Sergeant Deguito ordered Plaintiff's arrest. Audio File at 6:50-6:54.

[16] At this point in the conversion, Detective Becerra handcuffed Plaintiff and took him outside the ARC, while Sergeant Deguito informed Plaintiff he was under arrest. Hogan

12

....

| | |
|---|---|
| Hogan: | You didn't need to escalate this.[17] |
| Plaintiff: | It didn't.  And I'm glad to let it de-escalate.  I am perfectly glad to let this de-escalate. |
| Hogan: | No, you did not show that to us. |

....

| | |
|---|---|
| Deguito: | Do you want him back at all today? |
| ARC Staff Member: | Um, no. |

....

| | |
|---|---|
| Deguito: | Do you have any property in your locker? |
| Becerra: | Is there a locker number, or what? |

....

| | |
|---|---|
| Hogan: | You don't want your property? |
| Plaintiff: | I assert my right to remain silent. |
| Hogan: | Okay. |
| Deguito: | One more—one more thing. |
| Plaintiff: | I want a lawyer.  I want a lawyer now. |

....

| | |
|---|---|
| Becerra: | You guys cut the lock and toss it.  He doesn't want his property. |

....

| | |
|---|---|
| Deguito: | You can't come back today to get your shit. |

....

| | |
|---|---|
| Deguito: | 415. |
| Hogan: | That's the only thing. |
| Deguito: | He was— |
| Hogan: | I don't have a victim. |
| Deguito: | He was—he was, uh, 415 with the staff, right?  And then he wouldn't give us ID. |
| Unidentified Speaker: | 148, yeah, he didn't have a legal defense to provide [unintelligible]. |
| Deguito: | We had a 415, yeah— |

....

| | |
|---|---|
| Hogan: | Well, we can't book on that, can we? |

Audio File 2:40-9:09; Transcript, ECF No. 33 at 120-130; Mot. at 14:9-15:19; Oppo. at

---

Report at 110, 113.  Officer Hogan also assisted with handcuffing Plaintiff, although Plaintiff admits she did not participate in the decision to arrest him.  Oppo. at 19:3-5.

[17] After speaking with Leveron, Officer Hogan re-joined Plaintiff, Detective Becerra, and Sergeant Deguito.  Mot. at 15:6.

13

12:13-20:13; Compl. at 4-6, ¶¶ 20-28; Deguito Dep. at 28:13-15.

Plaintiff admits his "fear and anger" increased during the encounter with Officers Becerra and Deguito.  Oppo. at 14:20-23.  Meanwhile, Detective Becerra ordered the arrest because he concluded, based on both his interactions with Plaintiff and training and experience, that Plaintiff would not meaningfully cooperate and was, instead, obstructing the investigation.  Mot. at 15:12-15 (citing Becerra Decl. at ¶ 6; Hogan Decl. ¶ 8).

At 8:07 p.m., Officer Hogan placed Plaintiff under arrest for 148(a)(1) "after causing a peace disturbance, getting in a physical altercation with a patron[,] and refusing to cooperate with a police inestigation after SDSU PD responded" at 7:54 p.m. to a panic alarm call.  Hogan Report at 109.  Only afer his arrest did Plaintiff finally began talking with Defendants regarding the incident they were there to investigate.  Audio File 9:09-12:42.  Also at that time, Detective Becerra, accompanied by an ARC staff member, went to retrieve Plaintiff's property, and Plaintiff was not released until Becerra returned. Compl. at 9, ¶ 36; Mot. at 15:20-22; Oppo. at 20:10-13.  Plaintiff alleges that in retrieving his belongings, Detective Becerra unlawfully searched Plaintiff's belongings as well as failed to return a padlock and $80 in cash from Plaintiff's belongings.  Compl. at 9, ¶ 36. Meanwhile, Officer Hogan had the following conversation with Sergeant Deguito regarding for which provision of the California Penal Code they should cite Plaintiff:

| | |
|---|---|
| Hogan: | Hey, Serg! Serg? Do you wanna do the one? One is fight or challenge to a fight, but I don't have the victim?  Do you wanna do the offensive words one? |
| Deguito: | It's disturbing the peace. |
| Hogan: | Well, there's three sections.  Fight or challenge to fight in a public place.   Noise…or offensive words likely to provoke a violent reaction in a public place. |
| …. | |
| Hogan: | So this…the disturb the peace on school grounds…I mean he challenged someone to fight, but I don't have a victim…So, I would do offensive words likely to provoke…I mean, we…I don't…I don't know if this really works…because we can't be the victim. |
| Deguito: | No, we're not the victim.  Did he challenge one of the people at the desk to fight? |

14

| | |
|---|---|
| Hogan: | No, it was another patron that left. |
| Deguito: | We could do 148.  Just 148.  We detained him to investigate, and he wouldn't give us his name. |

Audio File at 15:00-17:00; Compl. at 7, ¶ 32.

Ultimately, Officer Hogan cited Plaintiff for Section 148(a)(1), and while writing the citation noticed a strong smell of alcohol coming from Plaintiff's breath and person. Mot. at 15:20-22 (citing Hogan Decl. at ¶ 9; Becerra Decl. ¶ 7); *see also* Hogan Report at 110.  Becerra also smelled alcohol on Plaintiff when they were speaking outside. Becerra Dep. at 60:15-19; Becerra Report at 112.  Plaintiff responded to Officer Hogan stating she smelled alcohol by replying, "You only smell alcohol because you want to." Hogan Report at 110.[18]

At approximately 33 minutes since he first approached Officer Hogan, one of the officers can be heard saying you can take the cuffs off now.  Audio File at 33:45-33:42. Yet just over a minute later, Plaintiff initially refused to sign his citation.  *Id.* at 34:52. Upon releasing Plainiff after he finally signed his citation, Officer Hogan informed Plaintiff that he would not be able to re-enter the campus, including the ARC, for seven days pursuant to section 626.6 of the California Penal Code ("Section 626.6").[19]  Mot. at 15:23-

---

[18] Nowhere in his opposition does Plaintiff deny being intoxicated.  *See generally* Oppo. However, because the complaint states that Hogan "falsely accused" him of being drunk, *see* Compl. at 8, ¶ 35, the Court finds Plaintiff has not admitted to alcohol use being failing to oppose that fact.

[19] This provision provides as follows:

> If a person who is not a student, officer or employee of a college or university and who is not required by his or her employment to be on the campus … enters a campus or facility, and it reasonably appears to … an officer or employee designated by the chief administrative officer to maintain order on the campus or facility, that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility … If that person fails to do so or if the person willfully and knowingly reenters upon the campus or facility within seven days after being directed to leave, he or she is guilty of a misdemeanor …

Cal. Penal Code § 626.6(a).

16:1; *see also* Hogan Report at 110-11.

After just under 37 minutes, Plaintiff was told he was free to go.  Audio File at 36:47. In sum, Plaintiff was arrested approximately six minutes after his initial contact with Officer Hogan and was released from the scene over 35 minutes after his initial encounter with Officer Hogan and 29 minutes after his arrest.  Hogan Report at 111; Compl. at 6-9, ¶¶ 28, 31, 34, 37.

On September 4, 2019, or exactly six months after the incident at the ARC, Plaintiff presented a claim to the California State University Office of the Chancellor (the "Chancellor").  Mot. at 30:6-7 (citing Rejection Notice, ECF No. 30-1 at 70).  On October 2, 2019, the Chancellor rejected the claim.  *See* ECF No. 30-1 at 70.

On February 18, 2020, Plaintiff entered the SDSU campus again, was arrested, booked, and jailed.  *See* ECF No. 30-1 at 82.  On March 18, 2020, the City Attorney filed a misdemeanor complaint against Plaintiff for violation of Section 626.6.[20]  *See People v. Parker*, San Diego Superior Court Case No. M267387 (2020) (the "Criminal Case").

## B. Procedural History

On April 6, 2020, Plaintiff filed his complaint against the SDSUPD, Police Chief Josh Mays, Deguito, Becerra, Hogan, and David Lamaku, alleging ten claims for relief for (1) unlawful detention in violation of 42 U.S.C. § 1983; (2) arrest without probable cause in violation of 42 U.S.C. § 1983; (3) false imprisonment in violation of 42 U.S.C. § 1983; (4) negligence; (5) failure to properly hire and screen; (6) failure to properly train; (7) failure to supervise and discipline; (8) *Monell* liability for a pattern brutality; (9) violation

---

[20] The court "[m]ay take judicial notice on its own," or *sua sponte*, FED. R. EVID. 201(c)(1), including of court records.  *See, e.g.*, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (providing that "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases").  Here, Defendants attached the complaint to their motion, *see* ECF No. 30-1 at 81, the case information is available on the San Diego Superior Court's website, *see* https://courtindex.sdcourt.ca.gov/CISPublic/casesearch, and Plaintiff's complaint references the criminal case, *see* Compl. at 20, Addendum.  Thus, the Court finds it appropriate to take judicial notice of the Criminal Case.

1  of the Bane Act, Cal. Civ. Code § 52.1; and (10) equitable relief.  ECF No. 1.

2   On June 23, 2020, the Court granted the parties' stipulation for dismissal of (1) the

3  SDSUPD, Police Chief Josh Mays, and David Lamaku as defendants and (2) the fifth,

4  sixth, seventh, and eighth claims for relief.  ECF Nos. 5, 7.  That same day, the remaining

5  Defendants filed their Answer.  ECF No. 6.

6   On May 17, 2021, Defendants filed the instant Motion.  ECF No. 30.  On October 6,

7  2021, Plaintiff filed his opposition brief, which was untimely.  ECF No. 32.  That same

8  day, he also submitted Exhibits A through O in support of his opposition brief, which

9  included the Audio File.  ECF No. 33.  On October 7, 2020, however, Plaintiff submitted

10 a declaration and application to have the Court accept his untimely brief, which also exceed

11 the allowable page limit.  ECF No. 34.  On October 25, 2021, the Court granted Plaintiff's

12 request for relief from the filing deadline and page limit while also setting a new reply

13 deadline for Defendant.  ECF No. 36.  On November 8, 2022, Defendants filed objections

14 to Exhibit O, the audio file submitted by Plaintiff.  ECF No. 38.  On November 9, 2021,

15 the Court granted Plaintiff leave to file the audio recording non-electronically in support

16 of his opposition.  ECF No. 39.  On December 13, 2021, Plaintiff submitted the Audio File.

17 ECF No. 40.  On January 19, 2022, Defendants timely submitted their reply brief.  ECF

18 No. 43.  Defendants also submitted responses to Plaintiff's Objections to Defendants'

19 Evidence.  ECF Nos. 31, 44.

20 ## III. LEGAL STANDARD

21  Where a moving party shows "there is no genuine dispute as to any material fact and

22 the movant is entitled to judgment as a matter of law," the Court must grant summary

23 judgment.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

24 (1986).  A fact is material if it could affect the outcome of the case under governing law.

25 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is

26 genuine if the evidence, viewed in the light most favorable to the non-moving party, "is

27 such that a reasonable jury could return a verdict for the non-moving party." *Id.*

28  The moving party may make this showing by identifying those portions of the

17

pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If a moving party carries its burden of showing the absence of evidence as to an essential element of the opposing party's case (e.g., a genuine issue of material fact), "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *see also Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009). "This burden is not a light one." *Oracle*, 627 F.3d at 387. The party opposing the motion for summary judgment "must show more than the mere existence of a scintilla of evidence" by coming forward "with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* The nonmoving party must go beyond the pleadings and designate facts showing a genuine issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). It can do this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor. Fed. R. Civ. P. 56(c).

The court also draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion seeking summary judgment. *See* Fed. R. Civ. P. 56(c). Further, if the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587.

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), but will draw inferences from the facts in the light most favorable to the nonmoving party, *see Earl v. Nielsen Media Research, Inc.*, 658 F.3d

1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion seeking summary judgment.  *See* Fed. R. Civ. P. 56(c); *see also Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *see also Nelson v. Pima Community College,* 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment").  Further, if the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  *Matsushita*, 475 U.S. at 587.

Under the Ninth Circuit's sham affidavit rule, unless subsequent testimony merely explains or clarifies prior testimony, a party may not create a genuine issue of fact by providing a declaration or affidavit that contradicts previous deposition testimony absent proof that the discrepancy resulted from mistake, newly discovered evidence, or an honest discrepancy.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *George v. Morris*, 736 F.3d 829, 843-44 (9th Cir. 2013).  Further, when video evidence captures the events giving rise to the parties' dispute, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," the Court should rely on the videotape evidence over any contradictory allegations by a party.  *See Scott*, 550 U.S. at 380-81.

## IV.   DISCUSSION

Plaintiff's has the following six remaining claims for relief in this case: (1) his First Claim for Relief for unlawful detention in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) his Second Claim for Relief for arrest without probable cause in violation of Section 1983; (3) his Third Claim for Relief for false imprisonment in violation of Section 1983; (4) his Fourth Claim for Relief for negligence; (5) his Ninth Claim for Relief for violation of the Bane Act, Cal. Civ. Code § 52.1; and (6) his Tenth Claim for Relief for equitable

relief.  ECF No. 1.  As set forth below, the Court **GRANTS** Defendants' motion for summary judgment as to all aforementioned claims because the undisputed facts of this case show Defendants are entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

### A. Summary Judgment is Proper Because No Genuine Issue of Fact Exists as to Plaintiff's Section 1983 Claims.

Plaintiff alleges his first three claims for relief arise from Section 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Rather, under this federal civil rights law, "[e]very person who, under color of any statute … of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.  Thus, to state a claim under Section 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Id.*; *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020).

As outlined below, while the Court finds the element of government conduct satisfied, it concludes that under the undisputed facts and evidence, no reasonable jury could find a violation of Plaintiff's constitutional rights.

#### 1. *Government Conduct*

Action under color of state law is a jurisdictional prerequisite to a Section 1983 action because the Eleventh Amendment prohibits United States citizens from suing states. U.S. Const., Amendment XI; *West*, 487 U.S. at 46.  As such, "[n]either a state nor state officials acting in their official capacities are 'persons' amenable to suit for damages under 42 U.S.C. § 1983." *Munoz v. Kolender*, 208 F. Supp. 2d 1125, 1150-51 (S.D. Cal. 2002). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49.  Essentially, the acts of the defendant in a Section 1983 action that are at issue must

1   have been done while abusing power given to the defendant by the State.  *Id.*

2         As stated, neither party addresses this issue in their briefing.  However, Plaintiff's
3   complaint alleges "[a]t all times relevant to this complaint, Defendant SDSUPD was a
4   branch of the California State University system, an agency of the State of California,
5   operating in San Diego County, California and employing the individual defendant
6   officers, who were acting within the scope of their employment."  Compl. at 2, ¶ 8.
7   Defendants' answer admits the allegations in this paragraph.  *See* Answer at 2, ¶ 8.  Thus,
8   the Court finds action by individuals acting under color of state law in this case.

9                    **2.      *Violation of a Constitutional Right***

10          The next "step in any such [1983] claim is to identify the specific constitutional
11   right allegedly infringed."  *Albright*, 510 U.S. at 271.  Plaintiff's First and Second claims
12   for unlawful detention and unlawful arrest allege violation of the Fourth Amendment.
13   Comp. at 10, ¶ 44, 11, ¶ 52.  Although Plaintiff's Third Claim for Relief for false
14   imprisonment is alleged under Section 1983, it fails to allege which constitutional
15   amendment Defendants' behavior violated.  *See id.* at 12, ¶¶ 69-63.  However, it does allege
16   Defendants "unlawfully detained Plaintiff for an unreasonable period of time after they
17   knew or should have known that he had committed no crimes."  *Id.* at 12, ¶ 60.  Thus, the
18   Court also construes the Third Claim for Relief as alleging a Fourth Amendment violation.

19          The Fourth Amendment provides that "[t]he right of the people to be secure in their
20   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not
21   be violated."  U.S. Const. Amend. 4.  As to Plaintiff's Section 1983 claims, "[i]n order to
22   prove [Defendants] deprived … Plaintiff[s] of [his] Fourth Amendment right to be free
23   from an unreasonable seizure, Plaintiffs must show: (1) Defendants seized … Plaintiff's
24   person; (2) in seizing … Plaintiff's person, Defendants acted unconstitutionally; and (3)
25   the seizure was unreasonable."  *Cervantes v. San Diego Police Chief Shelley Zimmerman*,
26   No. 3:17-cv-01230-BAS-AHG, 2020 WL 5759752, at *11 (S.D. Cal. Sept. 28, 2020), *aff'd*
27   *sub nom. Ramirez v. Zimmerman*, No. 20-56117, 2021 WL 5104371 (9th Cir. Nov. 3, 2021)
28   (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-99 (1989)).

A seizure of the person "occurs when a law enforcement officer, through coercion, physical force[,] or a show of authority, in some way … communicated to a reasonable person that he was not at liberty to ignore the police presence to go about his business." *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (internal citations and quotation marks omitted).  An arrest is the "the 'quintessential "seizure of the person" under … Fourth Amendment jurisprudence.'" *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) (noting "that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").  Here, the parties agree the first element of a Fourth Amendment deprivation (*i.e.*, a seizure) has been met. However, the Court must determine whether that seizure was constitutional and reasonable.

### a.  *Plaintiff's First Claim for Relief for Unlawful Detention*

Plaintiff's First Claim for Relief alleges violation of Section 1983 because Plaintiff "had a firmly established right under the Fourth Amendment to be free from unreasonable seizure."  Compl. at 10, ¶¶ 43-44.  He pleads Defendants violated this right by unlawfully detaining him "while no reasonable suspicion of a crime existed, and under false pretense, the 'failure to ID' citation, … in retaliation for … Defendants' perception of [Plaintiff]'s lack [of] respect for [them]."  *Id.* at 11, ¶ 49.

As outlined below, Plaintiff's arguments opposing summary judgment dispute whether Defendants were authorized to conduct an investigative stop in the first place, and even if they were, he contends they were not authorized to detain him.  Oppo. at 24-29. Finally, he argues that even *assuming arguendo* they could detain him, they were required to end the detention as soon as he declared his right to remain silent.  *Id.* at 29-31.  The Court address addresses each argument in turn but finds none of them create a genuine issue of fact supporting a claim for unlawful detention.

### i.  Defendants were authorized to conduct an investigative stop.

"The Fourth Amendment applies to seizures of the person, including brief

investigatory stops such as the stop of the vehicle here." *United States v. Cortez*, 449 U.S. 411, 417 (1981).  In *Terry v. Ohio*, the Supreme Court rejected a Fourth Amendment challenge of the ability of police officers to "stop and frisk"—now known as a "*Terry* stop"—an individual where a police officer reasonably "conclude[s] in light of his experience that [1] criminal activity may be afoot and … [2] the persons with whom he is dealing" is connected to that criminal activity.  392 U.S. at 30-31.  Such a *Terry* stop merely requires "reasonable, articulable suspicion that criminal activity is afoot" to comply with the Fourth Amendment.  *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000).  "The officer making a Terry stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch" of criminal activity.  *Alabama v. White*, 496 U.S. 325, 329 (1990) (internal quotations and citations omitted).  "In allowing such detentions, *Terry* accepts the risk that officers may stop innocent people."  *Wardlow*, 528 U.S. at 126. However, "[t]he *Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further."  *Id.* at 126.  "If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way."  *Id.*

Here, because Defendants had received a report that a crime occurred in the form of Plaintiff being involved in a physical altercation, followed by returning after being asked to leave, Defendants did not violate Plaintiff's Fourth Amendment rights so long as they had reasonable suspicion to believe Plaintiff was connected to those crimes.  *Terry*, 392 U.S. at 30-31.  The Court must analyze whether Defendants had reasonable suspicion to detain Plaintiff.

> ii.   Defendants had reasonable suspicion to detain Plaintiff.

Defendants argue they had reasonable suspicion that Plaintiff "[1] committed a crime in the cardio room, [2] disturbed the peace, and/or [3] threatened [Leveron] based on [a] the nature of ARC's first call to the police (physical altercation), [b] ARC's panic alarm, and [c] [Leveron]'s identification of Parker as an aggressor."  Mot. at 21:24-28.  They note that each of the Defendants had years of training and experience supporting their detention

of Plaintiff.  *Id.* at 21:28-22:2.  Further, even their police practices expert, Robert Fonzi, concluded reasonable suspicion existed for Plaintiff's detention, and that the detention complied with all applicable policies, procedures, and training.  *Id.* at 21:4-6 (citing Fonzi Decl. at ¶¶ 13-17).  Plaintiff opposes summary judgment by (1) attacking Defendants' evidence to support reasonable suspicion; (2) arguing that even considering that evidence, Defendants lacked reasonable suspicion supporting his detention; and (3) contending that Defendants' continued questioning of him qualified as a custodial interrogation, requiring Defendants to *Mirandize* him.[21]  Oppo. at 23:4-31:12.

Defendants reply that first, Plaintiff's opposition does not present affirmative evidence establishing Defendants lacked reasonable suspicion but rather "quibbles over irrelevant details."  Reply at 2:19-20.  Second, Defendants note that while Plaintiff argues they present no admissible evidence supporting summary judgment, Oppo. at 26-27, they presented declarations from all Defendants in this case along with their expert, which "are admissible evidence to support summary judgment motions," Reply at 3:7-8 (citing Fed. R. Civ. P. 56(c)(1), (4)).  Third, Defendants argue that the identification by Leveron of Plaintiff being the individual involved in the fight alone "supports reasonable suspicion[ ] because an officer's reasonable suspicion may be based on witness statements."  Reply at 3:12-30 (citing *United States v. Vandergroen*, 964 F.3d 876, 880 (9th Cir. 2020)).

"While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 124 (internal quotations omitted).  Courts evaluating whether reasonable suspicion exists "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).  "This process allows officers to draw on

---

[21]   Nowhere in Plaintiff's claims for relief does he allege a violation of his Fifth Amendment rights.  *See generally* Compl.

their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *Cortez*, 449 U.S. at 418).

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *White*, 496 U.S. at 330. Here, Defendants had more than "unparticularized suspicion" of criminal activity. *Wardlow*, 528 U.S. at 126. They had received two phone calls regarding Plaintiff being involved in a physical altercation at the ARC. *See* Becerra Decl. at 9, ¶¶ 2-3; *see also* Compl. at 4, ¶ 19. Plaintiff argues that "[w]ith only one hearsay witness available (Leveron), and no victim, there was no continuing reasonable suspicion to maintain [Plaintiff]'s detention." Oppo. at 28:28-29:2. However, just "as probable cause may be found based on hearsay from informants, reasonable suspicion may be found based on hearsay as well." *United States v. King*, No. C 10-00455 WHA, 2011 U.S. Dist. LEXIS 1725, at *13 (N.D. Cal. Jan. 3, 2011), *overruled in part on other grounds in United States v. King*, 687 F.3d 1189, 1189-90 (9th Cir. 2012) (internal citations omitted); *see also Spinelli v. United States*, 393 U.S. 410, 419 (1969) ("[A]ffidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial.") (internal citation omitted).

Here, although Leveron admitted she did not observe the fight, she told Officer Hogan that (1) she had received a report that two ARC members got into a physical fight and (2) Dolan himself told Leveron that Plaintiff had punched him. Mot. at 13:11-14; Hogan Decl. at 5-6, ¶¶ 3, 7; Suppl. Report at 114. Further, an eye witness who refused to identify herself also told Officer Hogan that Plaintiff had physically stricken Dolan after Dolan pushed Plaintiff. Mot. at 13:14-16; Hogan Decl. at 6, ¶ 7. Even though this eye witness chose to remain anonymous, the fact that Leveron's hearsay reports from two other people corroborated what the eye witness reported to Officer Hogan added reliability and credibility to the hearsay reports from Leveron as well as the anonymous eye witness report. *Compare Vandergroen*, 964 F.3d at 880 (finding that "[a]lthough the patrons

25

remained anonymous during the call, which generally cuts against reliability, their statements 'exhibit[ed] "sufficient indicia of reliability"' to overcome this shortcoming" and support reasonable suspicion) *with United States v. King*, 672 F.3d 1133, 1139 (9th Cir. 2012) (finding "police lacked a reasonable suspicion that Defendant was engaged in criminal activity" where "[t]he *only* information linking Defendant to the homicide was … unsubstantiated double and triple hearsay" from a confidential informant).  Further, the Supreme Court "cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124.  Here, Plaintiff's behavior was unquestionably evasive. *See* Compl. at 4, ¶ 20 (stating Plaintiff left the gym when he saw the ARC staff member make a call); *see also* Exhibit "O" (Plaintiff refusing to answer even basic questions that would have allowed the police to investigate and potentially release him).

In sum, the phone call when considered with the panic alarm, multiple accounts regarding a physical altercation, and Plaintiff's evasive behavior created reasonable suspicion for Plaintiff's detention.  Plaintiff's evidentiary objections do not change the Court's outcome.[22]  However, the Court must still address whether (1) Plaintiff violated the law by refusing to provide his name, (2) Plaintiff could anticipatorily invoke his *Miranda* rights, (3) Plaintiff waived his *Miranda* rights by continuing to speak, and (4) Plaintiff could invoke his Sixth Amendment right to counsel.

                              iii.      Plaintiff had an obligation to disclose his name.

"Although it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop, it has been an open question whether the suspect can be arrested and prosecuted for refusal to answer." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186-87 (2004).  The *Hiibel* court held that "[t]he principles of *Terry* permit a

---

[22] The Court declines to address the parties' individual evidentiary objections as the evidence the Court relied on could be presented in admissible form at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003); *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).  Therefore, the evidentiary objections, *see* ECF Nos. 32, 37, 38, 44, are **OVERRULED**.

State to require a suspect to disclose his name in the course of a *Terry* stop."  542 U.S. at 187; *see also INS* v. *Delgado*, 466 U.S. 210, 216 (1984) (noting that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure").   In *Hiibel*, the Supreme Court upheld the conviction of a man who, like Plaintiff here, refused to identify himself during a *Terry* stop and challenged his conviction under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. 542 U.S. at 180, 182.  Similar to how Defendants in this case responded to a call reporting a fight, in *Hiibel*, a caller reported an assault in a silver GMC truck, and when officers arrived to investigate, they found a man standing by the truck, who appeared to be intoxicated. *Id.* at 180-81.  However, when the officers explained they were investigating a reported fight, the suspect, like Plaintiff here, also repeatedly refused to provide identification. *Id.* at 180.  Like Defendants, the *Hiibel* officers placed the suspect under arrest after expressly warning him that "he would be arrested if he continued to refuse to comply." *Id.* at 181.  Further, just as Defendants cited Plaintiff for obstructing a police investigation, Hiibel was charged with willfully resisting, delaying, or obstructing a public officer in discharging his or her duties. *Id.*  On appeal of his conviction, the Court rejected the defendant's arguments that (1) the officer's conduct in requesting his identification violated his Fourth Amendment rights, and (2) being compelled to reveal his name violated his Fifth Amendment rights against self-incrimination. *Id.* at 182, 185, 190-91.

First, as to the Fourth Amendment challenge, the Supreme Court held that "[a]sking questions is an essential part of police investigations," and that "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." 542 U.S. at 185.  Next, the Court addressed the issue of whether, even though an officer may ask a suspect to identify himself, the suspect could be arrested for refusing to do so. *Id.* at 186-87.  In doing so, it relied on the fact that "a routine traffic stop is not a custodial stop requiring the protections of *Miranda* v. *Arizona,* 384 U.S. 436 (1966)." *Hiibel*, 542 U.S. at 187.  It held that because the *Hiibel* "request for identification was 'reasonably related in scope to the circumstances which justified' the stop … , not an

effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence[, it] … did not contravene the guarantees of the Fourth Amendment." *Id.* at 189.

Finally, as to the Fifth Amendment challenge, the Supreme Court noted that "[t]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Id.* at 189. As a result, while "[s]tating one's name *may* **qualify as an assertion of fact relating to identity**, … [e]ven if these required actions are testimonial, … petitioner's challenge must fail because in [that] case disclosure of his name presented no reasonable danger of incrimination." *Id.* at 189 (emphasis added).

Similar to *Hiibel*, in *Vanegas v. City of Pasadena*, the court granted summary judgment in favor of the defendant-officers also sued in a Section 1983 case arising out of an arrest after a plaintiff refused to identify himself. 2021 U.S. Dist. LEXIS 76047, at *8. The defendant-officer in *Vanegas* was at the courthouse when he heard on his radio that a victim called 911 to report that she was being followed. *Id.* at *2-3. When the officer observed an individual walking in the same direction on the same street on which the suspect had been reported walking, he repeatedly asked the suspect for identification. *Id.* Like Plaintiff here, the suspect refused to comply and asked what law required him to produce identification while taking out his phone to record the interaction. *Id.* at *3. The officer gave the individual the option to either produce identification or be placed in handcuffs. *Id.*

The *Vanegas* court held that "[c]onsidering all [the] facts, Officer Klotz had articulable facts supporting his suspicion that Plaintiff was the person identified in the 911 report and that he had been engaged in criminal activity." 2021 U.S. Dist. LEXIS 76047 at *8-9. The court noted that "Plaintiff's identification was necessary to confirm or dispel … suspicion that Plaintiff was the suspect in question" and "also would have allowed Officer Klotz to confirm or dispel suspicion that Plaintiff was … engaged in a pattern of stalking or other criminal activity." *Id.* at *9-10. "Nor did the demand for identification prolong the detention, as Plaintiff's identity had to be ascertained in order to determine whether Plaintiff was the subject of the 911 call." *Id.* at *10. "Consequently, the

28

investigative detention and demand for identification did not violate the Fourth Amendment." *Id.* The court also noted that "while the parties do not cite any California statute specifically empowering police officers to demand identification, California case law suggests that officers are permitted to request or demand identification consistent with general Fourth Amendment principles." *Id.* at \*13 (citing *People v. Vibanco*, 151 Cal. App. 4th 1, 13-14 (2007); *People v. Spicer*, 157 Cal. App. 3d 213, 221 (1984)). Further, "[e]ven without a statute specifically authorizing such a request or demand, California courts have appeared to construe Cal. Pen. Code § 148(a)(1) to prohibit refusal to comply." *Id.* Thus, the court did "see any constitutional significance to the absence of a California statute specifically empowering an officer to demand identification during an investigative detention." *Id.* at \*13-14. "Consequently, [Vanegas'] investigative detention and demand for identification did not violate the Fourth Amendment." *Id.* at \*10.

Like the *Vanegas* defendant, "Plaintiff's identification was necessary to confirm or dispel … suspicion that Plaintiff was the suspect in question" and would have potentially allowed Defendants to release him without arrest. 2021 U.S. Dist. LEXIS 76047 at \*9-10. Despite California not having a "stop-and-identify" statute, criminal procedure jurisprudence, including *Hiibel*, required Plaintiff to identify himself to Defendants because their request for identification was reasonably related in scope to the circumstances justifying their stop of Plaintiff. 542 U.S. at 189; *see also Vanegas*, 2021 U.S. Dist. LEXIS 76047, at \*13.

Finally, Plaintiff relies on *Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir. 1987) to argue he was not required to disclose his name. *See* Oppo. at 38:3-5. The *Martinelli* court held that police officers using Section 148 of the Penal Code to arrest a person for refusing to identify himself during a lawful *Terry* stop violates the Fourth Amendment's proscription against unreasonable searches and seizures. *Martinelli*, 820 F.2d at 1494. Not only did *Martinelli* precede *Hiibel* by almost twenty years, but it also did not hold that an arrest for failing to identify oneself, where the stop of the individual

was reasonably related to the circumstances justifying the stop, is unconstitutional.[23]  Also, Defendants did not arrest Plaintiff for refusing to identify himself; rather, they arrested him for obstructing their investigation into who was involved in the physical fight observed.

In sum, Defendants had reasonable suspicion both to stop Plaintiff as well as ask for his identification.  *See United States v. Christian*, 356 F.3d 1103, 1106 (9th Cir. 2004) ("[N]othing in our case law prohibits officers from asking for, or even demanding, a suspect's identification."); *see also Gallegos v. City of L.A.*, 308 F.3d 987, 993 (9th Cir. 2002) (upholding an hour long investigatory stop as reasonable in order to determine whether the suspect was the same individual that was the subject of a 911 call regarding a burglary in the area).  However, the Court must still address Plaintiff's argument that invocation of his Fifth Amendment rights turned his lawful detention into an unlawful seizure in violation of the Fourth Amendment.

> iv.  Defendants were not required to end the detention due to Plaintiff's claim of Fifth Amendment rights.

Plaintiff argues that after Officer Hogan mentioned a fight, he asserted his Fifth Amendment right to remain silent, and his "Fifth Amendment *Miranda* right attached the moment he declared it."  Oppo. at 29:6-30:15.  He contends that his detention qualified as a custodial interrogation, requiring Defendants to *Mirandize* him, and that their failure to

---

[23] Like Defendants here, the *Martinelli* defendants arrested the plaintiff under Section 148 "for delaying a lawful police investigation by refusing to identify herself."  *Id.* at 1492. The defendant-officers were investigating a hit-and-run accident involving a vehicle that the plaintiff had admitted she owned.  *Id.*  However, the plaintiff refused to supply identification or give her name for more than thirty minutes, and eventually, walked away from the investigation.  *Id.*  The officers arrested her, and she sued for civil rights violations pertaining to her, *inter alia*, alleged false arrest and imprisonment in violation of her Fourth, Fifth, and Fourteenth Amendment rights.  *Id.* at 1492.  On appeal of the verdicts in favor of the defendants, the Ninth Circuit—although affirming the judgments in favor of the defendant officers and city—held that the lower court had failed to adequately instruct the jury on the plaintiff's Fourth Amendment rights.  *Id.* at 1492-93.  "The court should have instructed the jury that the use of Section 148 to arrest a person for refusing to identify herself during a lawful *Terry* stop violates the Fourth Amendment's proscription against unreasonable searches and seizures."  *Id.* at 1494.

do so was unlawful.  *Id.* at 29:20-30:23.  He continues that because an arrest for Section 148(a)(1) can only be premised on officers performing a lawful duty, Defendants' unlawful conduct invalidates his arrest for section 148.  *Id.* at 30:24-26.  Defendants reply that Plaintiff's argument that continued questioning of him after he asserted his Fifth Amendment rights fails to support a Section 1983 claim.  Reply at 3:27-4:4.  They respond that Plaintiff had no *Miranda* rights because three issues demonstrate he was not subject to a custodial interrogation: (1) "[p]olice questioning does not rise to the level of a 'custodial interrogation' merely because the suspect is not free to leave"; (2) Plaintiff's decision to repeatedly continue the ongoing conversation with Defendants after asserting his Fifth Amendment right to remain silent indicate he waived any *Miranda* rights he may have had; and (3) "even if it were 'unlawful' for Defendants to continue questioning [Plaintiff], that does not justify [Plaintiff]'s interference with Defendants' lawful attempts to investigate the reported disturbance unrelated to the questioning of [Plaintiff]."  Reply at 7:1-8:9.

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. 5.  In other words, it protects an individual from "being compelled in any criminal case to be a witness against himself." *United States v. Hubbell*, 530 U.S. 27, 34 (2000) (internal quotations omitted).  In order for Plaintiff to have a Fifth Amendment right against self-incrimination, the Court must find both that (1) he was in custody and (2) subject to interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc).

Here, the Court finds that it need not undertake the inquiry of whether Plaintiff was subject to custodial interrogation because failure to *Mirandize* a defendant does not *per se* result in a violation of the defendant's Fifth Amendment rights.  *Chavez v. Martinez*, 538 U.S. 760, 767-70 (2003) (plurality opinion).  Rather, those rights are only violated if the defendant's un-*Mirandized* testimony is used against him in a criminal trial.  *Id.*  Thus, in *Chavez v. Martinez*, the Supreme Court reversed the Ninth Circuit's decision that the

plaintiff had stated a claim under Section 1983 for violation of his Fifth and Fourteenth Amendment rights.  538 U.S. 760, 763 (2003).  The Court held that the arresting officer's "failure to read *Miranda* warnings to Martinez did not violate [the defendant]'s constitutional rights and [could not] be grounds for a § 1983 action" because the defendant's statements "were never admitted as testimony against him in a criminal case." *Id.* at 763, 770, 772 (citing *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987) (noting that *Miranda* "is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose").

More recently, and relying on *Chavez*, the Ninth Circuit similarly affirmed dismissal of a Section 1983 plaintiff's claims for violation of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel because he never made "a statement that was used in a criminal proceeding." *Chavez v. Robinson*, 12 F.4th 978, 982 (9th Cir. 2021) (citing *Chavez*, 538 U.S. at 770).  The court "recognized the distinction between the core Fifth Amendment trial right, which a plaintiff can use as a sword against a government official in a § 1983 action, and the judicially created prophylactic rule, which shields a person from coercive government questioning, but does not provide the basis for a § 1983 action." *Id.* at 989.  "If an incriminating statement is not used in a criminal proceeding, there is no cognizable Fifth Amendment claim." *Id.* at 990 (internal quotations omitted).

Although Plaintiff's complaint addresses the subsequent criminal proceeding brought against him for the Section 626.6 violation, he failed to come forward with any evidence that he was compelled to testify against himself in any criminal trial, including the Section 626.6 criminal case. *See generally* Oppo.  Thus, Defendants' failure to *Mirandize* Plaintiff in no way violated his Fifth Amendment rights or his Fourth Amendment rights by making the detention unreasonable.

Defendants' evidence, including their declarations and reports, establish an objectively reasonable basis to suspect Plaintiff had committed a crime through his involvement in either creating a disturbance in the ARC and/or fighting with another individual in violation of Section 415, creating reasonable suspicion to detain him.

Because Plaintiff has only attacked Defendants' evidence but failed direct the Court to evidence showing a lack of reasonable suspicion to support Defendants' detention of Plaintiff, the Court finds it appropriate to **GRANT** summary judgment in Defendants' favor as to the First Claim for Relief for unlawful detention.  Under the undisputed facts of this case—namely, that whether or not he was the aggressor, Plaintiff was involved in a dispute in the gym that had been reported to have turned physical, Defendants had reasonable suspicion to stop, detain, and question Plaintiff.  Further, even if Plaintiff's detention rose to the level of a custodial interrogation, Defendants' failure to *Mirandize* him or continuing to question him did not violate his Fifth Amendment rights, and thus, did not result in an unreasonable detention giving rise to a Section 1983 claim for Fourth Amendment violations.

                b.    *Plaintiff's Second Claim for Relief for Unlawful Arrest*

Plaintiff's Second Claim for Relief for unlawful arrest alleges that he "had a firmly established right under the Fourth Amendment to be free from arrest without probable cause," but "Defendants arrested [Plaintiff] despite the fact that [he] had committed no crime."  Compl. at 11, ¶ 52.  In other words, he pleads Defendants arrested him without probable cause.  *Id.* at 11, ¶ 53.

Ultimately, Defendants cited and released—rather than arrested and booked—Plaintiff for violation Section 148(a)(1).  Mot. at 15:23.  They argue that while Plaintiff "was free to refuse to answer questions about the altercation [but not his name], he was not entitled to interfere with the officers' performance of their duties."  *Id.* at 19:16-18.  Thus, they contend that the Court should grant summary judgment as to this claim because (1) Section 148 is a general intent crime, so whether Plaintiff intended to obstruct the investigation is irrelevant; (2) Defendant's alleged improper motives for the arrest are also irrelevant so long as probable cause existed for the arrest; (3) because probable cause can justify an arrest for any offense, it does not matter if the police considered arresting him for a different offense; (4) while Plaintiff's failure to produce identification may not, in and of itself, create probable cause, it factors into the totality of the circumstances supporting

33

the arrest; and (5) Plaintiff's interruption of a witness interview supports his arrest for obstructing the police. *Id.* at 21:8-25:3.

Plaintiff responds by—rather than denying that he interfered with an investigation—arguing that he "was certainly entitled, by well-established law and constitutional right, to interfere in at least [seven] ways." Oppo. at 33:17-20.  First, he argues that merely delaying the arrest does not justify an arrest under Section 148, and Defendants have failed to show he caused any delay. *Id.* at 33:22-34:20.  Second, he contends that he had a constitutionally protected right to both criticize the police and refuse to provide identification and cannot be arrested for such behavior. *Id.* at 34:22-36:4.  Third, he argues that an arrest for Section 148 requires that the police were acting lawfully at the time of the arrest, and because Defendants were acting unlawfully, his arrest, like his detention, is invalid. *Id.* at 36:6-26. Fourth, he argues that Defendants' conduct should all factor into the Court's consideration of the totality of the circumstances and dispel a finding of probable cause for his arrest. *Id.* at 39:13-40:12.  Finally, Plaintiff argues that "Defendants do not offer any facts supporting an attempt to intimidate, nor do they offer support for any conclusion that Leveron was intimidated." *Id.* at 40:13-22.

Defendants reply that under the totality of circumstances set out in their motion, they had probable cause to arrest Plaintiff for not only delaying or obstructing an investigation under Section 148(a)(1) but also unlawfully fighting or challenging another to a fight in a public place under Section 415(1).  Reply at 5:8-13.  They also point out that the cases relied upon by Plaintiff addressed "whether an arrestee's conduct was sufficient to support a conviction, not whether officers had probable cause to make an arrest," and probable cause for an arrest is lower than the burden on prosecution to secure a conviction." *Id.* at 6:11-18 (citing *United States v. Brobst*, 558 F.3d 982, 997 (9th Cir. 2009)).

An "arrest" generally requires "that the individual be formally arrested; the mere issuance of a citation, even if considered an arrest under state law, is insufficient." *Yith v. Nielsen*, 881 F.3d 1155, 1168 (9th Cir. 2018) (noting that "a formal arrest may be indicated by informing the suspect that he is under arrest, transporting the suspect to the police

station, and/or booking the suspect into jail").  Here, Plaintiff received only a cite and release citation.  Thus, even though Plaintiff was told he was being placed under arrest and was handcuffed, again, it appears he was not actually arrested so as to substantiate his unlawful arrest claim.  *See, e.g.*, *United States v. Price*, 980 F.3d 1211, 1225 (9th Cir. 2020) ("Handcuffing is a substantial factor in determining whether an individual has been arrested—although it alone is not determinative."); *see also United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("[O]fficers with a particularized basis to believe that a situation may pose safety risks may handcuff … an individual without converting an investigative detention into an arrest.").

Absent exigent circumstances, courts presume that a warrantless arrest is unconstitutional.  *Payton v. New York*, 445 U.S. 573, 587-88 (1980).  Thus, "[a] claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015).  Here, Defendants arrested Plaintiff without a warrant, but "[a] violation of the warrant clause does not necessarily violate the Fourth Amendment's reasonableness clause, the predicate for § 1983 liability."  *Duncan v. City of San Diego*, 401 F. Supp. 3d 1016, 1032-33 (S.D. Cal. 2019) (Moskowitz, J.).  So long as the undisputed facts show probable cause supported Plaintiff's arrest as a matter of law, his Section 1983 claims will not stand.

"An arrest must be supported by probable cause to believe that the person being arrested has committed a crime."  *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 938 (9th Cir. 2020) (citation omitted).  Probable cause "must be based on 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused has committed or was committing an offense.'"  *Id.*  "The police need not know, however, precisely what offense has been committed."  *Price*, 980 F.3d at 1225.

Plaintiff contends that probable cause for his Section 148(a)(1) arrest may only be established using post-detention information, not pre-detention information (*i.e.*, that they were responding to a fight).  Oppo. at 37:1-38:8.  "The legal elements of a violation of

section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (quoting *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002)). "Although section 148 is commonly applied to physical acts of resistance or flight from a police officer, the statute is not limited to a defendant's nonverbal conduct." *People v. Jacques*, No. D075619, 2020 Cal. App. Unpub. LEXIS 5134, *10, 2020 WL 4668404, at *4 (Aug. 12, 2020), *as modified on denial of reh'g* (Aug. 25, 2020). "For a § 148(a)(1) conviction to be valid, a criminal defendant must have resisted, delayed, or obstructed a police officer in the *lawful* exercise of his duties." *Smith*, 394 F.3d at 695 (internal quotations omitted). Thus, "[i]n California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Id.* Plaintiff argues that Defendants continued questioning of him after his assertion of *Miranda* rights made Defendants' investigation unlawful, meaning they were not lawfully exercising their duties, and his arrest for Section 148(a)(1) is unconstitutional. Oppo. at 31:9-11; 36:6-26. However, as the Court has already found Defendants' continued questioning of Plaintiff lawful, this argument fails.

Next, Plaintiff contends that "[r]efusing to provide identification is a constitutionally protected inaction," relying on *Martinelli*, to argue his arrest for refusing to identify himself cannot be based on probable case if it arises from his exercise of a constitutional right. Oppo. at 34:22-36:4. Indeed, "the exercise of a constitutional right cannot be punished under section 148." *People v. Valencia*, 240 Cal. App. 4th Supp. 11, 21 (2015). However, this Court has already established that (1) Plaintiff had no constitutional right to refuse to provide identification and (2) his arrest was not just for his refusal but also for interfering with Hogan's interview of Leveron, resisting Defendants by attempting to leave during the interview, and lunging at Hogan. Thus, Plaintiff has failed to create an issue of fact as to whether Defendants acted lawfully when arresting him for violating Section 148(a)(1).

As to whether Plaintiff delayed Defendants, he argues his conduct amounted to nothing more than "mere delay," which "is not a violation of section 148." *Arteaga v. City of Oakley*, No. 19-cv-05725-JCS, 2021 WL 1391465, at *7 (N.D. Cal. Apr. 13, 2021) (citing *People v. Quiroga*, 16 Cal. App. 4th 961, 966 (1993)).  He compares his case to the case of *People v. Quiroga*.  Oppo. at 34:6-15.  However, *Quiroga* hurts rather than helps Plaintiff's case.  In *Quiroga*, the court held "that there was in fact evidence to support [the defendant's] conviction for resisting a peace officer."  *Quiroga*, 16 Cal. App. 4th at 965. The officers in *Quiroga* "responded to a report of a noisy party in an apartment complex," but upon entry, observed and smelled marijuana use.  *Id.* at 964.  When the officer asked for the cigarette, the defendant walked into a hallway, but the officer ordered him to sit back down on the couch.  *Id.*  The defendant complied only after arguing with the officer. *Id.*  Later, the officer ordered the defendant to put his hands on his lap, and the defendant again refused to cooperate initially, but eventually, obeyed.  *Id.*  Next, the officer ordered the defendant to stand up, and again, he refused to do us until the officer pulled on his arm. *Id.*  When he stood up, the officer located cocaine in the cushion of the couch.  *Id.* at 964-95.  The defendant appealed his conviction for the possession of cocaine, Cal. Health & Saf. Code § 11350, subd. (a), and resisting a peace officer, Cal. Pen. Code § 148.  *Id.* at 964.  However, the California Court of Appeal affirmed his conviction for resisting arrest under Section 148 for the following reasons:

> In the words of Penal Code section 148, appellant's act of **refusing to disclose his identity at the booking interview unquestionably served to resist**, **delay** and **obstruct the responsible peace officer in the discharge of his duties**.  The obstructive effect was as significant as the actions for which Penal Code section 148 has traditionally been applied; appellant impeded the administration of justice as effectively as if he had fled from an investigatory detention or physically struggled with a peace officer.  In the absence of constitutionally protected speech, we hold that the jury could reasonably find that the nondisclosure came within the definition of the offense.

*Id.* at 972 (emphasis added).

In the present case, as in *Quiroga*, Plaintiff eventually cooperated and provided his

37

name and identification but only after initially refusing to comply.  *Quiroga*, 16 Cal. App. 4th at 965.   Further, although Plaintiff argues Defendants "have not identified with specificity a single second of delay caused by [Plaintiff], beyond vague references," Oppo. at 34:16-20, the Court finds that even if he did not interrupt Hogan's interview of Leveron, his approaching Hogan prevented her from interviewing Leveron in the first place, which obstructed her ability to investigate the reported incident.  Additionally, Plaintiff took more than 4 minutes before telling the officers his name, despite being told at least two times by the officers that he was required to provide his name.  *See* Audio File at 4:52.  Despite saying his name once, he refused to repeat his last name when Detective Becerra asked him to repeat it because he had missed it, *see id.* at 5:49-6:06.  Only when Sergeant Deguito told Detective Becerra to arrest him for obstruction, did Plaintiff agree to repeat his name. *Id.* at 6:06-6:47.   Then, Plaintiff continued the same pattern of refusing to provide the officers with his date of birth.  *Id.* at 6:50-6:52.  The Court finds no genuine issue of fact as to this behavior demonstrating delay, obstruction, and resistance to a lawful investigation of a crime.

Similarly, returning to *Vanegas*, that plaintiff also brought an unlawful arrest claim, while arguing, like Plaintiff here, that failure to produce identification "by itself" cannot serve as the basis for an arrest.  2021 U.S. Dist. LEXIS 76047, *10-11.  The Court rejected this argument for two reasons.  *Id.*  First, the Court noted that while "[a]n arrest based solely on a suspect's refusal to provide identification violates the Fourth Amendment when the arresting officer does not have a lawful basis to conduct a *Terry* stop," so long as the arresting officer's request for identification reasonably relates to the circumstances justifying the *Terry* stop, "an arrest of a suspect for failure to identify himself did not violate the Fourth Amendment."  *Id.* at *11 (citing *Brown*, 443 U.S. at 52; *Hiibel*, 542 U.S. at 188-89).  The *Vanegas* court reasoned that Supreme Court case law "illustrate[s] that the constitutionality of an arrest for failure to provide identification turns on whether the investigative detention is itself constitutional."  *Id.*  Thus, because "Officer Klotz's *Terry* stop was supported by reasonable suspicion, … Plaintiff's refusal to produce

38

his identification during [that] lawful investigative detention gave officers probable cause to arrest him for violating Cal. Pen. Code § 148(a)(1)." *Id.* at *11-12.  Next, the court concluded that even if section 148(a)(1) of California's Penal Code did not support the plaintiff's arrest, section 415(2) did because it "prohibits 'maliciously and willfully disturb[ing] another person by loud and unreasonable noise.'" *Id.* at *14-15.  Thus, because the "Plaintiff was continuing to yell[,] … the officers had probable cause to arrest Plaintiff for violating Cal. Pen. Code § 415(2)." *Id.* at *15.

As in *Vanegas*, while Defendants could not walk up to Plaintiff on the street and arrest him for failing to identify himself without any reasonable suspicion of his criminal involvement, so long as Defendants conducted a lawful *Terry* stop, Plaintiff's arrest based on his refusal to identify himself during that lawful *Terry* stop does not violate the Fourth Amendment.  2021 U.S. Dist. LEXIS 76047, *11.  As the *Vanegas* court noted, even if Section 148(a)(1) does not support Plaintiff's arrest, probable cause for Plaintiff's arrest existed under Section 415.  Although Plaintiff argues that Officer Hogan stated there was "no victim," the recording along with her declaration indicate that there was, in fact, a purported victim; rather, the issue was that the victim had not come forward or filed a report. *See* Audio File at 16:40-16:50 (noting that the victim was another patron that left). Defendants could have still arrested Plaintiff for violation of Section 415(2) while they attempted to locate the victim.

Additionally, Plaintiff argues that "[u]nder Defendants' reasoning, it's acceptable to get a feel for the total atmosphere and the suspect's conduct and make an arrest, then figure out what criminal statute to apply later."  Oppo. at 32:21-23.  He references how Officers Deguito and Hogan debated over what crime to document. *Id.* at 32:23-24.  To the extent Plaintiff argues Defendants violated his constitutional rights in arresting him because they were unsure with what section of the Penal Code to charge him, Plaintiff's arguments fail. As noted, "[p]robable cause may exist for an arrest for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." *Blankenhorn v. City of Orange*, 485 F.3d 463, 473

(9th Cir. 2007).  "As long as the officers had some reasonable basis to believe [the defendant] had committed a crime, the arrest is justified as being based on probable cause." *Id.*  Here, Defendants had probable cause to believe Plaintiff had committed a crime by disturbing the peace, being involved in a physical altercation, and obstructing the investigation of those crimes.

Finally, to the extent Plaintiff argues his arrest was unlawful because his *Miranda* rights were violated by continuing questioning after he asked for counsel under the Sixth Amendment, such an argument also fails.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall … have the Assistance of Counsel for his defence." U.S. Const. Amend. 6.  The Sixth Amendment applies to petty offenses, misdemeanors, and felonies alike.  *Mason v. Arizona*, 504 F.2d 1345, 1355 n.5 (9th Cir. 1974) "However, the right to counsel under the Sixth Amendment does not attach until a prosecution is commenced, meaning at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Booker*, 2021 U.S. Dist. LEXIS 177641, at *26 (quoting *United States v. Charley*, 396 F.3d 1074, 1082 (9th Cir. 2005)) (internal quotations omitted).  Here, Plaintiff invoked his Sixth Amendment right to counsel after his arrest; however, he was never formally charged and did not have a preliminary hearing, indictment, information, or arraignment.  Thus, his Sixth Amendment rights never attached, meaning they could not have been violated.

In sum, the undisputed facts of this case, including Defendants' reports, which corroborate the audio recording of Plaintiff's arrest and the transcript of the arrest, establish probable cause for Plaintiff's arrest.  Under the undisputed facts of this case—namely, that Plaintiff repeatedly refused to provide basic information he was required to provide, took a step toward Officer Hogan while she was interviewing Plaintiff, prevented Hogan from interviewing witnesses upon her arrival, and attempted to leave three times, probable cause existed to arrest Plaintiff for delaying, obstructing, and resisting a peace officer under Section 148(a)(1).  Further, Defendants' failure to *Mirandize* Plaintiff did not make their

40

interview with Plaintiff unlawful such that probable cause did not exist for his arrest under Section 148(a)(1).  Even if, *assuming arguendo*, it had, the undisputed facts regarding at least one phone call from ARC staff to Defendants reporting the altercation, witness identification of Plaintiff as the aggressor by Leveron, and other eyewitness reports that Plaintiff had been involved in a physical altercation also created probable cause for his arrest for Section 415(1) even if the victim had departed.  Thus, the Court finds it appropriate to **GRANT** summary judgment in Defendants' favor as to the Second Claim for Relief for unlawful arrest.

c.   *Plaintiff's Third Claim for Unlawful Imprisonment*

Plaintiff's Third Claim for Relief for Unlawful Imprisonment alleges that "Defendants unlawfully detained Plaintiff for an unreasonable period of time after they knew or should have known that he had committed no crimes."  Compl. at 12, ¶ 60.

Defendants argue that Plaintiff "cannot bring a false arrest claim under § 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  Mot. at 25:6-8. They cite to *Baker v. McCollan*, 443 U.S. 137, 146 (1979) for the proposition that "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."  *See id.* at 25:11-12.  Plaintiff opposes by arguing that the case relied on by Defendants, *Baker v. McCollan*, is inapposite because there, the defendant was held for three days on what was determined to be a valid arrest warrant, whereas here, Plaintiff's arrest was unlawful.  Oppo. at 40:25-41:6.  He also argues that his false arrest claim is based on the Fourth Amendment, pertaining to his unlawful detention and arrest, and Fourteenth Amendment pertaining to a due process violation due to the extension of the arrest period and investigation.  *Id.* at 41:1-6.  Defendants reply that "[a]lthough [Plaintiff's] complaint does not identify the allege Constitutional deprivation [for this claim], [he] indicates in his opposition that it is a due process claim under the Fourteenth Amendment."  Reply at 8:18-21.  However, "[p]retrial deprivations of liberty are protected by the Fourth Amendment, not the Fourteenth Amendment."  Reply at 8:20-21 (citing

41

*Albright v. Oliver*, 510 U.S. 266, 274–75 (1994)).  Thus, they argue that the Third Claim for Relief is duplicative of the first and second claims under the Fourth Amendment and not separately cognizable.  *Id.* at 8:22-24.

Two issues warrant summary judgment pertaining to Plaintiff's Third Claim for Relief for false imprisonment.  First, even though the complaint pleads the claim under Section 1983, false imprisonment is a tort, so Plaintiff's claim is a state law claim, not a federal claim.  Even *assuming arguendo* Plaintiff could bring a federal claim for false imprisonment under Section 1983 due to alleged due process violations, *Baker* held that where the plaintiff had "been deprived of no rights secured under the United States Constitution, [he] had no claim cognizable under § 1983."  443 U.S. at 146-47.  Thus, because the Court has found no constitutional violations in this case, any federal based claim fails.

Second, to the extent the Court liberally construes Plaintiff's claim as a state law based tort claim for false imprisonment, that claim also fails.  "False imprisonment is the unlawful violation of the personal liberty of another."  Cal. Penal Code § 236.  However, no civil liability "shall arise against, any peace officer … or law enforcement officer … acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" where, *inter alia*, the arrest was (1) "lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful" or (2) "made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested."  Cal. Penal Code § 847(b); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919-20 (9th Cir. 2001) (providing that Section 847 of the California Penal Code prevents a claim of false arrest where the arrest was lawful).  Thus, to prevail on a claim for false arrest/false imprisonment, a plaintiff must establish the following: "(1) the nonconsensual intentional confinement of a person; (2) without lawful privilege; and (3) for an appreciable period of time, however brief."  *Lee v. City of San Diego*, 492 F. Supp. 3d 1088, 1109 (S.D. Cal. 2020) (Whelan, J.), *appeal dismissed,* No. 20-56146, 2021 WL 5352884 (9th Cir. May 11, 2021).

Probable cause supporting an arrest qualifies as "lawful privilege" defeating a claim for false arrest or imprisonment. *See Arpin*, 261 F.3d at 919-20.   Here, the Court has held that probable cause supported Plaintiff's arrest.  Thus, Defendants made Plaintiff's arrest with lawful privilege, which defeats a false arrest or imprisonment claim.  Thus, the Court grants Defendants' motions for summary judgment as to the false arrest/imprisonment claim.  *See, e.g.*, *Jones v. Hernandez*, No. 3:16-cv-01986-W-WVG, 2018 WL 6018071, at *6 (S.D. Cal. Nov. 15, 2018) (Whelan, J.) (granting summary judgment in favor of the defendants on the false arrest/imprisonment claim because "[a]s there was probable cause to arrest Jones, the arrest was with lawful privilege and there was no false arrest").

### 3. *Qualified Immunity*

Defendants argue that not only should the Court grant summary judgment because the undisputed facts and evidence fail to show a violation of Plaintiff's constitutional rights, but Plaintiff also failed to carry his burden of proving any alleged right was clearly established.  Mot. at 27:4-12 (citing *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) ("The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong."); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (same); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011) ("If the plaintiff fails to carry his burden at any step, qualified immunity should be granted to the defendant.")).  Defendants point out that during discovery, they asked Plaintiff to identify "all legal authority that existed before the incident that would have put defendants on notice that they were violating [Plaintiff's] rights," and he did not respond.  *See* Mot. at 28:12-24 (citing Plaintiff's Responses to Defendants' Interrogatories at ECF No. 30-1 at 69, 77).  Plaintiff disputes that he must carry the burden of showing the violation of his constitutional rights was clearly established, arguing that "Defendants are asking [Plaintiff] 'Tell us what law would have shown us not to arrest you[,]' while [Plaintiff] is waiting for an answer to 'First, tell me why you arrested me.'"  Oppo. at 42:5-12.  Plaintiff is incorrect.

First, Defendants told Plaintiff multiple times during the recording of his interaction with Defendants why he was being arrested.  *See* Audio File 1:02-2:22.  Second, even if

43

they had not, he is not entitled to a list of reasons from Defendants so long as probable cause did, in fact, support his arrest.  Here, the Court finds that it does.  Plaintiff also argues that he can simply rely on the Fourth Amendment to establish the unlawfulness of his arrest.  Oppo. at 42:1-7.  In their reply, Defendants point out that Plaintiff refused to provide authority to clearly establish the contours of his rights, and "[h]is citation to the Fourth Amendment is insufficient."  Reply at 9:7-16 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.")).  Thus, they argue Plaintiff has failed to adequately oppose Defendants' arguments that they are entitled to qualified immunity.  Reply at 9:16-22.

Qualified or absolute immunity is an affirmative defense for government officials sued in their individual capacities in a Section 1983 action.  *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005).  "Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Estate of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1164 (S.D. Cal. 2015) (citing *Anderson,* 483 U.S. at 638-40); *accord Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019).  "This privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  *Torres*, 105 F. Supp. at 1164 (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).  Plaintiffs bringing a Section 1983 claim against individual officers and seeking to avoid the defense of qualified immunity must "demonstrate that (1) a federal right has been violated and (2) the right was clearly established at the time of the violation."  *Horton*, 915 F.3d at 599 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  A district court may address these questions in the order most appropriate to "the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 242.

1

a. *Constitutional Deprivation*

2    "If there is no constitutional violation, the inquiry ends and the officer is entitled to

3  qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). *Citizens in*

4  *Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (noting the public officials are

5  entitled to qualified immunity if either "(1) they did not violate any constitutional

6  guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time

7  of the alleged misconduct"). Because the Court has determined that the undisputed facts

8  and evidence in this case fails to show a constitutional violation, such that no reasonable

9  jury could find in Plaintiffs' favor, the Court also grants Defendants' motion for summary

10  judgment as to the federal claims on the basis that they are entitled to qualified immunity.

11

b. *Clearly Established Law*

12    As to whether the law at the time was clearly established, if a court decides that the

13  facts a plaintiff has alleged show "a violation of a constitutional right," *Pearson*, 555 U.S.

14  at 232, "[t]he plaintiff bears the burden of showing that the right he alleges to have been

15  violated was clearly established," *Collins*, 110 F.3d at 1369. A right is clearly established

16  "[i]f the only reasonable conclusion from binding authority [was] that the disputed right

17  existed," *Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997), and "every reasonable

18  official would have understood that what he is doing violates that right." *Horton*, 915 F.3d

19  at 599. Generally, "[i]f the controlling law is not clearly established, a reasonable person

20  would not be expected to know how to structure his conduct in order to avoid liability."

21  *Romero v. Kitsap County*, 931 F.2d 624, 628 (9th Cir. 1991). "This is not to say that an

22  official action is protected by qualified immunity unless the very action in question has

23  previously been held unlawful[.]" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Only "when

24  the defendants' conduct is so patently violative of the constitutional right that reasonable

25  officials would know without guidance from the courts that the action was unconstitutional,

26  closely analogous pre-existing case law is not required to show that the law is clearly

27  established." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994). This is an "exacting

28  standard" which "gives government officials breathing room to make reasonable but

45

1  mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly

2  violate the law." *City and County of San Francisco, Cal v. Sheehan*, 575 U.S. 600, 611

3  (2015) (alteration in original; internal quotation marks omitted).  If the officer makes a

4  reasonable mistake as to what the law requires, then, the right is not clearly established,

5  and the officer is entitled to immunity.  *Torres*, 105 F. Supp. 3d at 1164.

6       In *Vanegas*, the plaintiff brought a nearly identical claim to the one brought by

7  Plaintiff in this case, and the Court noted that "Plaintiff does not cite, and the Court has not

8  independently found, any authority for the proposition that an arrest for obstructing a police

9  officer based on the arrestee's failure to produce identification violates the Fourth

10 Amendment if the state lacks a statute defining the officer's duties to include requesting

11 such identification." 2021 U.S. Dist. LEXIS 76047, *14.  Like the *Vanegas* case, Plaintiff

12 also fails to direct the Court to any such authority.  2021 U.S. Dist. LEXIS 76047, *14.

13 Thus, this Court joins the *Vangegas* court in concluding that "such a right is not clearly

14 established, and a reasonable officer would not have been placed on notice that an arrest

15 under these circumstances would have been unlawful." *Id.*

16      **B.**    **Plaintiff's Tenth Claim for Injunctive Relief**

17      Defendants argue that the Court should grant summary judgment as to the equitable

18 relief claim because (1) in order to prevail, Plaintiff must show he is likely to prevail on

19 the merits and (2) if the Court grants summary judgment in Defendants' favor on the

20 substantive claims, "it must necessarily enter summary judgment on the injunctive relief

21 claim." Mot. at 31:15-16.  Defendants also contend that because a state prosecution against

22 Plaintiff was initiated on March 18, 2020, before Plaintiff filed his complaint in this case,

23 the *Younger* abstention doctrine requires this Court to abstain from ruling on the claim for

24 injunctive relief.  *Id.* at 31:20-33:4.  Plaintiff responds by clarifying that he "requests

25 injunctive relief from SDSUPD's misapplication of the law" because if Defendants

26 prevailed on summary judgment despite misapplying the law (*e.g.*, due to qualified

27 immunity), he "would still face real and immediate threat through [Defendants]'

28 misapplication of the law."  Oppo. at 45:10-13.  He also contends that "Defendants'

*Younger* abstention request is untimely, not being ripe for application until [Plaintiff]'s injunctive relief comes to the Court on its merits." *Id.* at 45:22-24. However, Defendants seek summary judgment on the injunctive relief claim, so that claim is properly before the Court. Plaintiff also clarifies that the pending state criminal charges do not involve Section 148 at all, so he still seeks injunctive relief as to Section 148 even if injunctive relief as to Section 626.6 is barred by *Younger*. *Id.* at 45:36-46:2. Defendant replies that because Plaintiff fails to respond to their arguments that Plaintiff cannot prevail on the merits of his injunctive relief claim, or that the Court should abstain under *Younger*, the Court should grant summary judgment. Reply at 10:5-12.

Plaintiff's Tenth Claim for Injunctive Relief alleges that "unless enjoined, [D]efendants will continue to engage in the unlawful acts and in the policies and practices described above, in violation of the legal and constitutional rights of … Plaintiff and others who are similarly situated." Compl. at 19, ¶ 111. He pleads that "on Feb. 18, 2020, unlawfully arrested again by SDSUPD, this time through unlawful application of Cal. 626.6 PC, in retaliation for his victory against SDSUPD in this false arrest case and for the filing of Internal Affairs complaints against officers." *Id.* at 19, ¶ 113. Plaintiff also alleges that he "has no adequate and complete remedy at law to prevent this continued unlawful harassment against himself or other citizens." *Id.* at 19, ¶ 114. Although Plaintiff does not clearly state he seeks an injunction—beyond labeling this claim as a claim for "injunctive relief"—and fails to indicate what the injunction should say or do, the Court liberally construes the complaint as seeking an injunction prohibiting Defendants from harassing and unlawfully intimidating him. *See* Compl. at 19, ¶ 13. However, the Court finds that Plaintiff has failed to present facts showing that any harassment or unlawful intimidation occurred. Further, it appears that at the time he filed his complaint, the claim should have been dismissed as violative of the *Younger* abstention doctrine.

### 1. *Younger Abstention Doctrine*

In *Younger v. Harris*, 401 U.S. 37, 41 (1971), the Supreme Court reversed a district court judgment enjoining prosecution of the defendant, finding that the injunction violated

"national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." The Court expressly stated that it "express[ed] no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." *Id.* The Ninth Circuit has since clarified that "*Younger* abstention applies to state civil proceedings when the proceeding: (1) is ongoing, (2) constitutes a quasi-criminal enforcement action, (3) implicates an important state interest, and (4) allows litigants to raise a federal challenge." *Citizens for Free Speech, LLC v. Cty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020). If those elements are met, courts will consider whether the federal action would effectively enjoin the state proceedings. *Id.*

The Supreme Court has expressly held that "where a case is properly within [the *Younger*] category of cases, there is no discretion to grant injunctive relief." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 n.22 (1976); *see also Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) ("When a case falls within the proscription of *Younger*, a district court must dismiss the federal action."). "The initial frame of reference for abstention purposes is the time that the federal complaint is filed." *Adibi v. Cal. State Bd. of Pharmacy*, 461 F. Supp. 2d 1103, 1109 (N.D. Cal. 2006).

Here, the complaint against Plaintiff was signed on March 11, 2020 but is shown in Defendants' exhibits to their motion as file-stamped on June 19, 2020. ECF No. 30-1 at 81-82. It alleges that Plaintiff entered the SDSU campus on February 18, 2020, in violation of section 626.6 of the California Penal Code. *Id.* However, in an addendum to this complaint, Plaintiff asks this Court to "stay action on the current complaint until the second action (re: 626.6 PC false arrest) is ripe for amendment of this current complaint." Compl. at 20. This admits that the state court prosecution had been initiated before he filed this lawsuit. While it is unclear whether the state court prosecution is ongoing,[24] that is of no

---

[24] Defendants' May 17, 2021 motion indicates Plaintiff's arraignment was scheduled for July 12, 2021. Mot. at 32:2-3. Both Plaintiff's October 6, 2021 opposition and Defendants'

consequence given "the critical question is not whether the state proceedings are still 'ongoing,' but whether 'the state proceedings were underway before initiation of the federal proceedings.'" *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) (affirming dismissal of claims where the plaintiffs were all defendants in Oregon state court proceedings brought by the state at the time they filed their federal case even though state proceedings had concluded) (citing *Fresh Int'l*, 805 F.2d at 1358). Thus, the Court finds that the *Younger* abstention doctrine applies. To the extent Plaintiff argues that his requested injunction only pertains to alleged unlawful application of Section 626.6 and not Section 148(a)(1), which is at issue in this case, the Court finds this argument difficult to address given the generality with which he pled his requested relief. However, liberally construing all facts and evidence in Plaintiff's favor as the nonmoving party, the Court finds, as set forth below, any request for injunctive relief from which this Court need not abstain under *Younger* fails on the merits.

### 2.   Likelihood of Success on the Merits

"A preliminary injunction is an equitable remedy aimed at preserving the status quo and preventing the occurrence of irreparable harm during the course of litigation." *Neighborhood Mkt. Ass'n, Inc. v. Cty. of San Diego*, 529 F. Supp. 3d 1123, 1129 (S.D. Cal. 2021) (Sammartino, J.) (citing FED. R. CIV. P. 65). "A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, … [2] he is likely to suffer irreparable harm in the absence of preliminary relief, … [3] the balance of equities tips in his favor, and … [4] an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Id.* at 24. Where a plaintiff has failed to show the likelihood of success on the merits, courts "need not consider the remaining three [*Winter* elements]." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013). A Section 1983 plaintiff seeking injunctive

---

January 19, 2022 reply brief fail to address the outcome, if any, of that arraignment.

relief must also show that his or her injury was caused by a municipal policy or custom. *Cf. Los Angeles Cty., Cal. V. Humphries*, 562 U.S. 29, 30-31 (2010).

The Court finds that the *Benn* court, in dismissing similar equitable claims, explained best why Plaintiff's claims fail:

> "An injunction properly issues only where the right to be protected is clear, injury is impending and so immediately likely as only to be avoided by issuance of the injunction." *East Bay Mun. Utility Dist. v. Dept. of Forestry & Fire Protection*, 43 Cal. App. 4th 1113, 1126 (1996). "**Injunctions should not be granted as punishment for past acts**." *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 574 (1995) (quoting *Choice-in-Educ. League v. Los Angeles Unified Sch. Dist.*, 17 Cal. App. 4th 415, 422 (1993)). Furthermore, "[a] complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of." *E.H. Renzel Co. v. Warehousemen's Union*, 16 Cal. 2d 369, 373 (1940) (emphasis added).

*Benn v. Allstate Ins. Co.*, --- F. Supp. 3d ---, No. 5:21-cv-01584-JFW-SPX, 2021 WL 5049101, at *4 (C.D. Cal. Oct. 29, 2021). Thus, in *Benn*, the court determined that because the plaintiff failed to "plead any facts showing any impending threatened injury" but rather focused "fact[s] regarding events that have already happened," it would be impossible for the court to implement an injunction for that past conduct. *Id.* First, "[b]ecause there [were] no ongoing acts alleged in the Complaint, the request for an injunction [was] moot." *Id.* (noting that "the only specific facts set forth in the Complaint concern the prior handling of her own claim" rather than "specific acts [the defendant] is currently taking or threatening to take that she wants the Court to enjoin").

Second, the *Benn* court also dismissed the claim for injunctive relief by declining to exercise equity jurisdiction because "the effect of entering an injunction or other relief would call for detailed or day to day judicial supervision." 2021 WL 5049101 at *15 (citing, *inter alia*, *Natural Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1300 (9th Cir. 1992) ("Injunctive relief may be inappropriate where it requires constant

50

1   supervision."); *Bray v. Safeway Stores, Inc.*, 392 F. Supp. 851, 868 (N.D. Cal. 1975) ("It

2   has long been settled that a court shall not issue an injunction that would be inconvenient

3   or inefficient to administer."). It noted the relief the plaintiff requested, which asked for an

4   injunction requiring his insurer to handle claims in good faith, "would be an administrative

5   nightmare" given the requested injunction would apply indefinitely.  *Id.* at *15-16.

6          Here, separate and aside from the fact that the injunction requested in the complaint

7   is similarly vague to the one dismissed in *Benn*, it also fails to non-conclusorily plead

8   ongoing conduct.  *See* Compl. at 19.  To the extent his opposition clarified that he seeks

9   "injunctive relief from SDSUPD's misapplication of the law," Oppo. at 45:10-13, this

10  request, like the one in *Benn*, is far too vague and would require indefinite court

11  supervision.  FRCP 65(d) requires "[e]very order granting an injunction" to state (1) "the

12  reasons why it issued"; (2) "its terms specifically"; and (3) "in reasonable detail … the act

13  or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  It must also detail the parties

14  bound by the injunction or order.  Fed. R. Civ. P. 65(d)(2).  Here, Plaintiff has not provided

15  the Court with information to comply with those requirements.  More importantly, because

16  the Court determines that Defendants have not, in fact, misapplied the law, judgment in

17  Defendants' favor as a matter of law is also appropriate as an injunction preventing them

18  from misapplying the law is unwarranted.  *See Albers v. Paul Revere Ins. Grp.*, No. 20-cv-

19  08674 NC, 2021 U.S. Dist. LEXIS 251731, at *11-12 (N.D. Cal. Dec. 23, 2021) (finding

20  that "[u]nder the undisputed facts, no reasonable juror could find for Albers" where "it

21  [was] unclear precisely what plaintiff is seeking to enjoin").

22         Defendants' motion for summary judgment is **GRANTED** as to Plaintiffs' Tenth

23  Claim for Injunctive Relief.  *See, e.g.*, *Cervantes*, 2020 WL 5759752, at *20–21 (granting

24  summary judgment in the defendants' favor as to their equitable claims as "duplicative

25  because Plaintiffs' remaining § 1983 claims necessarily determine the constitutionality of

26  City Defendants' conduct, thus obviating the need for declaratory relief stating the same").

27  **C.    Plaintiff's State Law Claims for Negligence and Bane Act Violations**

28         Defendants argue that the Court should grant summary judgment as to Plaintiff's

state law claim for two reasons.  First, if the Court grants summary judgment on the federal claims, it should also grant summary judgment on the state law claims because they "are so entangled with the federal claims that the rejection of the latter properly entails rejection of the former."  Mot. at 29:12-16 (citing *Coe v. Cook Cty.*, 162 F.3d 491, 496 (7th Cir. 1998)).  Second, Defendants argue that even if Plaintiff's state law claims had merit, they are time-barred by the California Government Claims Act's (the "CGCA") six month statute of limitations.  *Id.* at 29:24-31:12.

In order to bring a suit for money damages against a public entity or its employees, the CGCA requires that prior to filing suit, a claimant must file and present a written claim to the public entity, and that the public entity must either act upon or reject the claim.  CAL. GOV'T CODE § 945.4; *see also* CAL. GOV'T CODE §§ 905; 910.  A claim relating to personal injury, such as Plaintiff's claim, must be presented within six months after the accrual of the cause of action.  CAL. GOV'T CODE § 911.2(a).  Compliance with the CGCA is mandatory, rather than a simple procedural requirement, and failure to comply may prove fatal to a cause of action.  *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

Plaintiff's complaint does not allege compliance with the CGCA, which is required to sustain state law claims.  *See generally* Compl.  However, Defendants did not move to dismiss on this basis.  Rather, Defendants argue that the file stamp on the complaint proves Plaintiff failed to timely file his state law claims by the applicable six month CGCA statute of limitation, which should warrant the Court granting summary judgment as to those claims.  Mot. at 29:24-30:9 (arguing that Plaintiff filed his complaint on Monday, April 6, 2020, rather than the deadline of Thursday, April 2, 2020).  Plaintiff responds by providing a declaration from Don Goodwin of Central San Diego Attorney Service, stating he received a work order by e-mail from Plaintiff to file the complaint by 4:30 p.m.  ECF No. 33 at 18-19, ¶¶ 1-3.  Mr. Goodwin states that at 3:19 p.m., on April 2, 2020, he "personally executed delivery of [Plaintiff]'s document at the Carter-Keep Courthouse."  *Id.* at 19, ¶ 4. He elaborates by stating that a security officer told him to use the fourth floor drop box,

but there was no time stamp machine next to the drop box, so he could not time stamp the complaint. *Id.* He also provides on e-mail from Plaintiff at 2:20 p.m. providing the complaint for filing. ECF No. 33 at 21. Finally, he provides a check for his services dated April 2, 2020. *Id.* at 22.

Plaintiff's Complaint was signed under penalty of perjury on April 2, 2020. *See* Comp. at 20. However, the ECF-generated filing header and receipt for payment show payment and filing on April 6, 2020. ECF No. 1 at 21.

Defendants ask the Court to take judicial notice of the following facts: (1) the procedure of the Clerk of the United States District Court for the Southern District of California is to file-stamp documents on the same day received by relying on publicly available information from the Court's website; (2) the receipt for Parker's filing fee is dated April 6, 2020, as evidence by the receipt attached to his complaint; (3) the envelope in which Parker's complaint was delivered to the Clerk's office is marked as received on April 6, 2020, as also evidence by the complaint; and (4) the Clerk's office filed new lawsuits on both April 2 and 3, 2020.[25] ECF No. 30-2 at 2:1-18.

At any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2) *see also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records); *D.K. ex rel. G.M. v. Solano Cty. Off. of Educ.*, 667 F. Supp. 2d 1184, 1189–90 (E.D. Cal. 2009) (granting the request for judicial notice to the extent the defendants asked for the court to take judicial notice of the timely filing and subsequent rejection of the government tort claims, which "is a prerequisite to the filing of

---

[25] *See Musgrove v. Pierce*, No. 3:20-cv-00655-JAH-LL (S.D. Cal. Apr. 2, 2020); *Kuhne v. Gossamer Bio, Inc.,* No. 3:20-cv-00649-DMS-DEB (S.D. Cal. Apr. 3, 2020); *Hafer v. Merck Sharp & Dohme Corp*., No. 3:20-cv-00650-AJB-MDD (S.D. Cal. Apr. 3, 2020); *Flores v. Austin*, No. 3:20-cv-00656-TWR-DEB (S.D. Cal. Apr. 3, 2020).

a civil complaint").  Thus, the Court **GRANTS** Defendants' request for judicial notice because the documents—namely, the Court's website, portions of Plaintiff's complaint, and other publicly filed lawsuits—are all public records not subject to reasonable dispute.

As a result, the Court takes judicial notice of the fact that the Clerk's Office in the Southern District of California was not only operational on Thursday, April 2, 2020, but also filed at least one new lawsuit on that day and three lawsuits on the following day.  *See* Mot. at 31:8-12.  It also takes judicial notice of the fact that the Attorney FAQs section of the website for the Southern District of California states that if a document is placed in the drop box, "[i]t will be file stamped the same day it was dropped," and "[t]he drop box is from 4:30 p.m. – 6:00 p.m. Monday through Friday."  *See* https://www.casd.uscourts.gov/attorney/attorney-faq.aspx#faq6.  Although the Court takes judicial notice of the fact that the website states this, it does not take judicial notice of the fact that the complaint was, in fact, file-stamped on that date.

The Ninth Circuit has acknowledged the existence of a "rebuttable presumption that the clerk had properly performed his duty and put his filing mark on the date the notice was delivered to him."  *Silverton v. Valley Transit Cement Co.*, 237 F.2d 143, 144 (9th Cir. 1956) (finding substantial evidence that an appeal was in the clerk's possession by the filing deadline).  However, this presumption "disappears when substantial evidence to the contrary is produced."  *See id.*; *see also N.Y. Life Ins. Co. v. Gamer*, 303 U.S. 161, 170 (1938) (noting that a "presumption is not evidence and ceases upon the introduction of substantial proof to the contrary").  Here, the Court finds Plaintiff's evidence, namely Mr. Goodwin's declaration, provides substantial evidence sufficient to rebut the presumption that Plaintiff must have filed his complaint on the same day the clerk stamped it.  Thus, the Court **DENIES** Defendants' summary judgment on the grounds that Plaintiff failed to timely file the lawsuit and continues on to address the merits of the state law claims.

### 1.    *Fourth Claim for Relief for Negligence*

Plaintiff's Fourth Claim for Relief for Negligence alleges, *inter alia*, that Defendants "failed to act with ordinary care and breached their duty of care owed to Plaintiff."  Compl.

at 13-14, ¶¶ 65-66.   Under California law, "the 'plaintiff in a negligence suit must demonstrate [1] a legal duty to use due care, [2] a breach of such legal duty, and [3] the breach as the proximate or legal cause of [4] the resulting injury.'" *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (quoting *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (2017)).   "The required element of legal causation has two components: 'cause in fact and proximate cause.'" *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (citing *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 298 (2015)).

Defendants do not specifically address the merits of Plaintiff's negligence claim but rather argue the Court should dismiss all state law claims as untimely and failing to survive if the Court finds no constitutional violation.   Mot. at 29:10-30:9.   Plaintiff responds by addressing his Bane Act claim without addressing how the facts or the evidence support his claim for negligence.   Oppo. at 43:9-26.   Defendants reply does not address the negligence claim.

First, Plaintiff's failure to direct the Court to evidence or facts creating a genuine issue of fact as to his negligence claim warrants summary judgment.   *See* S.D. Cal. Civ. R. 7.1(f)(3)(c); *see also Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their ... opposition to the defendants' motion for summary judgment, so the argument was waived").   As such, for purposes of ruling on this Motion, the Court treats Defendant's arguments seeking summary judgment as to this claim as unopposed but examines the merits of those arguments nonetheless.

Second, both the Ninth Circuit and California courts have held that a Fourth Amendment violation "suffices to establish the breach of a duty of care under California law."   Here, the Court has not found a Fourth Amendment violation.   In addition, in the absence of allegations of some other basis for a duty of care, the absence of facts or evidence supporting a constitutional violation demonstrates the absence of a breach of duty of care, a critical element for a negligence claim.   *Contra Young v. Cty. of L.A.*, 655 F.3d

1156, 1170-71 (9th Cir. 2011) (reversing summary judgment on a negligence claim
because due to the fact that the district court erred in determining whether a constitutional
violation occurred, it also erred in finding a lack of duty of care under California law);
*Green v. Bd. of Regents of the Univ. of Cal.*, No. 2:21-cv-04077-RGK-AFM, 2021 U.S.
Dist. LEXIS 252311, at *15-16 (C.D. Cal. Oct. 22, 2021) ("Under California law, a well-
pleaded constitutional violation serves to establish the breach of a defendant's duty of
care for negligence purposes.").

Thus, the Court **GRANTS** Defendants' motion for summary judgment as to
Plaintiff's Fourth Claim for Relief for negligence because no reasonable jury could find
that Defendants breached a duty of care to Plaintiff given neither the complaint nor his
opposition brief clearly set forth a viable duty of care that Defendants breached.

### 2.    *Ninth Claim for Relief for Violation of the Bane Act*

Plaintiff's Ninth Claim for Relief for Violation of the Bane Act alleges that he "had
a firmly established right to be free from excessive detention, arrest, search and seizure
under the Fourth Amendment through the Fourteenth Amendment to the United States
Constitution and the equivalent provisions of the California Constitution." Compl. at 17,
¶ 103. He pleads that Defendants interfered with his rights under the Fourth Amendment
of the United States Constitution and the equivalent provisions of the state Constitution by
the use of threats and force alleged above." Compl. at 18, ¶¶ 104-05.

Defendants argue the Court should dismiss the Bane Act claim because it is based
on Plaintiff's Fourth Amendment claims, so if the Court finds no Fourth Amendment
violation, it should also dismiss a Bane Act claim. Mot. at 29:10-23 (citing *Coe*, 162 F.3d
at 496 (noting the plaintiff's state law "claims are so entangled with the federal claims that
the rejection of the latter probably entails rejection of the former as well"). Plaintiff
responds that Defendants threats to arrest him and revoke his membership were made with
the intention of coercing him to provide identification, "something he was otherwise not
lawfully required to do." Oppo. at 43:18-26. Defendants' reply reiterates that because
Plaintiff has failed to set out some violation other than the Fourth Amendment, then if his

56

1    Fourth Amendment claim fails, so too must his Bane Act claim.  Reply at 9:23-10:4.

2        Plaintiff alleges a claim for relief for violation of California Civil Code section 52.1

3    ("Section 52.1"), "the California state law analog to section 1983."  *Johnson v. Bay Area*

4    *Rapid Transit Dist.*, 724 F.3d 1159, 1167 (9th Cir. 2013); *see also Jones v. Kmart Corp.*,

5    17 Cal. 4th 329, 331 n.1 (1998) (noting that the elements of a claim under California Civil

6    Code § 52.1 are essentially identical to a claim under 42 U.S.C. § 1983).  In order to prevail

7    on his claim under Section 52.1, Plaintiff must prove that (1) Defendants deprived him of

8    an interest protected by the federal or California Constitution; (2) using "threats,

9    intimidation, or coercion," (3) which caused Plaintiff to reasonably believe that if he

10   exercised his constitutional rights, he would be met with violence; (4) Plaintiff was harmed;

11   and (5) Defendants' conduct was a substantial factor in causing that harm.  Cal. Civ. Code

12   § 52.1(a).

13       Plaintiff's Bane Act claim fails for two reasons.  First, under the Bane Act, "[s]peech

14   alone is not sufficient to support a [Bane Act claim] except upon a showing that the speech

15   itself threatens violence . . . and the person . . . against whom threat is directed reasonably

16   fears that, because of the speech, violence will be committed against them or their property

17   and that the person threatening violence has the apparent ability to carry out the threat."

18   Cal. Civ. Code § 52.1(j).  Further, "[a] 'threat' under this section means 'an expression of

19   an intent to inflict evil, injury, or damage to another.'"  *Howard v. Contra Costa Cnty.*,

20   2014 U.S. Dist. LEXIS 26908, at *74 (N.D. Cal. Feb. 28, 2014) (citing *In re M.S.*, 10 Cal.

21   4th 698, 710 (1995)).  The relevant inquiry under the Bane Act "is whether a reasonable

22   person, standing in the shoes of the plaintiff, would have been intimidated by the actions

23   of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*,

24   722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).  Plaintiff's complaint generally alleges

25   Defendants interfered with his rights "by the use of threats and force."  *See* Compl. at 18,

26   ¶ 104.  He does not specify what those threats were.  *See id.*  Defendants' threats to arrest

27   him would not be sufficient to establish a Bane Act claim, *see Howard*, 2014 U.S. Dist.

28   LEXIS 26908, at *74.  Rather, Plaintiff would need to establish, by pointing to facts or

evidence in this case, a threat of actual injury.  *See id.*

Second, the Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones*, 17 Cal. 4th at 334. To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, by the specified improper means, prevent the plaintiff from doing something that he had the right to do under the law, or force plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (citing *Jones*, 17 Cal. 4th at 334).  Plaintiff's complaint generally alleges violation of "the Fourth Amendment through the Fourteenth Amendment to the United States Constitution and the equivalent provisions of the California Constitution."  Comp. at 17, ¶ 103.  However, the Court has already determined the facts and evidence in this case do not establish a federal constitutional violation.

To the extent Plaintiff seeks to establish a deprivation under the California Constitution, the California equivalent to the Fourth Amendment is Article 1, section 13 of the California Constitution, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated."  Cal Const, Art. I § 13.  On the one hand, courts have held that this provision affords "a broader security against unreasonable searches and seizures than that required by the United States Supreme Court."  *Betchart v. Dep't of Fish & Game*, 158 Cal. App. 3d 1104, 1107 (1984) (internal quotations omitted); *see also People v. Brisendine*, 13 Cal. 3d 528, 545 (1975) ("Our holding today is based exclusively on article I, section 13, of the California Constitution, which requires a more exacting standard for cases arising within this state.").  On the other hand, Plaintiff has failed to direct the Court to evidence or facts creating a genuine issue of fact showing how Defendants violated his rights under the California Constitution.  *See generally* Oppo.

Other courts have granted summary judgment on Bane Act claims when they had already found the absence of a violation of the United States Constitution.  *See, e.g.*, *Mahgerefteh v. City of Torrance*, 324 F. Supp. 3d 1121, 1139 (C.D. Cal. 2018) (granting

summary judgment in the defendants' favor because "Plaintiffs' facial challenge under the California Constitution fails for the same reason as does their facial challenge under the federal constitution").  For example, in *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 954 (E.D. Cal. 2011), the court found that the defendants were "entitled to summary judgment as to Plaintiff's claim under California's Bane Act" where the court had "found that Plaintiff in this case was not seized and has not suffered a cognizable constitutional injury under either the Fourth or Fourteenth Amendments."  It noted that "[n]or is there any claim of independent violation of a California constitutional provision or a separate California statute." *Id.*  Here, the Court finds that because Plaintiff failed to point the Court to evidence or facts showing how Defendants violated a California constitutional right, the Court's dismissal of the federal Fourth Amendment claims necessitates dismissal of his Bane Act claim as well.  Thus, Plaintiff has failed to show a genuine issue of fact as to how Defendants violated his federal or California constitutional rights, meaning his Bane Act claim fails as a matter of law.  As such, the Court **GRANTS** Defendants' motion for summary judgment as to the Bane Act claim as well.

### D.    Plaintiff's Request to Reopen Discovery

This Court's scheduling order required all discovery to be completed by March 5, 2021, ECF No. 13 at 1, ¶ 2; *see also* Mot. at 10:15-16, and pretrial motions to be filed by May 17, 2021, ECF No. 27.  In Plaintiff's Opposition Brief, he argues that Defendants "withheld a portion of the police report."  Oppo. at 46:5-6.  He argues that two issues impacted his discovery strategy, which warrant the Court re-opening discovery: First, he argues that Defendants failed to list Becerra's body worn camera footage in their initial disclosures.  *Id.* at 46:10-14.  Second, he argues that while Officer Lamaku testified he was not inside the ARC that night, Plaintiff recalls him being inside that night.  *Id.* at 46:18-21.  Defendants respond that the Court should deny Plaintiff's request because discovery closed on March 5, 2021, and Plaintiff has not filed a motion to modify the scheduling order or attempted to show good cause or diligence in seeking the discovery.  Reply at 10:18-23.  They note that its expert report, which mentions relying on the body worn camera footage

1  was available to Plaintiff before discovery closed.  *Id.*  They also respond that because

2  Plaintiff has not shown good cause for modifying the scheduling order, the Court should

3  deny Plaintiff's request, especially because the factual questions he has concerning the

4  deposition testimony and expert report were available to him before discovery closed.  *Id.*

5  at 10:15-23.

6          "District courts have wide latitude in controlling discovery, and their rulings will not

7  be overturned in the absence of a clear abuse of discretion."  *United States v. Kitsap*

8  *Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).  For example, they "may entertain a

9  motion to reopen discovery or may order discovery pursuant to Federal Rule of Civil

10  Procedure 26(b)."  *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1171 (9th Cir. 2010);

11  *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii) (vesting courts with the ability to "limit the

12  frequency or extent of discovery" if they find that … "the party seeking discovery has had

13  ample opportunity to obtain the information by discovery in the action").  Additionally,

14  FRCP 56(d) also provides that if a party opposing summary judgment "shows by affidavit

15  or declaration that, for specified reasons, it cannot present facts essential to justify its

16  opposition, the court may . . . . allow time to obtain affidavits or declarations or to take

17  discovery."  Fed. R. Civ. P. 56(d)(2).  A "district court's decision not to permit additional

18  discovery pursuant to Federal Rule of Civil Procedure 56(f) [now 56(d)] … is reviewed for

19  an abuse of discretion."  *United States Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.*,

20  281 F.3d 929, 934 (9th Cir. 2002).  However, a motion for additional discovery "must be

21  brought before the summary judgment hearing."  *Ashton-Tate Corp. v. Ross*, 916 F.2d 516,

22  520 (9th Cir. 1990).  Further, such a motion "must be accompanied by an affidavit or

23  declaration."  Fed. R. Civ. P. 56(d)(2).

24          "[A] district court should continue a summary judgment motion upon a good faith

25  showing by affidavit that the continuance is needed to obtain facts essential to preclude

26  summary judgment."  *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138

27  F.3d 772, 779 (9th Cir. 1998).  The party seeking the additional discovery "must show (1)

28  that they have set forth in affidavit form the specific facts that they hope to elicit from

further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Id.* "[F]ailure to comply with the requirements of Rule 56[d] is a proper ground for denying discovery and proceeding to summary judgment." *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001). "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[d]." *Campbell*, 138 F.3d at 779; *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) (finding "[t]he district court did not err by failing to grant Aflatooni additional discovery in response to defendants' motion for summary judgment" when he "never made a Rule 56(f) motion, much less before the district court issued its summary judgment ruling").

Here, Plaintiff's request, made within his opposition papers and not as a separate motion, clearly fails to comply with the requirements for a motion to reopen discovery. *See, e.g.*, *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) (finding the district court did not abuse its discretion in refusing to a similar request as the plaintiff's "request in his memorandum in opposition to the County's motion for summary judgment that the district court allow him to file an expert report on October 1 was plainly inadequate"). More importantly, Plaintiff could not file such a motion even if he wanted to do so as the pretrial motion cut-off deadline has long since come and gone. *See* ECF Nos. 13, 27. However, because Plaintiff appears *pro se*, the Court considers the merits of the request. *Erickson*, 551 U.S. at 94.

Defendants' expert, Robert Fonzi, submitted a report dated May 12, 2021, which indicates he relied on "[b]ody worn camera footage from Hogan, Deguito, and Lamaku" as well as "[s]urveillance video from Aztec Recreation Center." Declaration of Robert Fonzi, ECF No. 30-1 at 28:14-16. Further, at Plaintiff's March 2, 2021 deposition, Plaintiff was asked whether he took an aggressive step toward Hogan and responded, "Well, I haven't seen the video, so I don't know … what it looks like[,] …but it's not in my nature to be aggressive, and I certainly did not intend to be aggressive." Plaintiff's Deposition, ECF No. 30-1 at 21:21-22:5. This indicates that at the time of his deposition, which was

three days before the close of discovery, Plaintiff was well aware that video footage of his interaction existed; yet, he failed to request that footage or move to extend the discovery cut-off deadline. *See, e.g.*, *Feltzs v. Cox Communs. Cal.*, --- F. Supp. 3d ---, No. CV 19-2002 JVS (JDEx), 2021 U.S. Dist. LEXIS 207087, at \*22 (C.D. Cal. Oct. 21, 2021) ("The Court declines to reopen discovery when it is readily apparent that this should have been addressed during the discovery process."). Further, to the extent Plaintiff's motion really alleges Defendants withheld information during discovery, such a motion would have been better addressed as a motion to compel. *See, e.g.*, *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1166 (N.D. Cal. 2021) (denying Plaintiffs' motion to reopen discovery because "[w]hether or not Google was forthright and complete in its prior productions is a separate question that is more properly resolved on a separate motion to compel at the appropriate time"). Finally, "[i]t is not clear that any further discovery on the topic would be necessary or fruitful," *DeFrenza v. Progressive Express Ins. Co.*, 345 F. Supp. 3d 1243, 1256 (E.D. Cal. 2017), given Plaintiff's arguments in this case are unsupported as a matter of law.

Thus, the Court exercises its broad discretion to **DENY** Plaintiff's request to reopen discovery. *See Marlo v. UPS*, 453 F. App'x 682, 684 (9th Cir. 2011) (holding the district court did not err "in denying UPS's motion to reopen discovery, a decision that falls within the 'wide latitude' afforded district courts in controlling discovery").

## V.   CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1.   Defendants' Motion for Summary Judgment is **GRANTED**. ECF No. 32. The Court grants summary judgment in Defendants' favor as to the remaining claims in this case: The First Claim for Relief for unlawful detention, the Second Claim for Relief for unlawful arrest, the Third Claim for Relief for false imprisonment, the Fourth Claim for Relief for negligence, the Ninth Claim for Relief for violation of the Bane Act, and the Tenth Claim for Relief for Equitable Relief. The Fifth, Sixth, Seventh, and Eighth Claims for Relief were previously dismissed by the parties. *See* ECF Nos. 5, 7.

2. The Clerk of the Court will enter judgment in favor of all Defendants, and against Plaintiff, as to the entire action. *See, e.g.*, Fed. R. Civ. P. 54(d)(1) (allowing courts to award costs to the prevailing party in a case); *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016) (holding "that a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party'" and "has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed").

3. All future dates in this case are vacated, including but not limited to the Final Pretrial Conference.

4. Both parties' evidentiary objections, *see* ECF Nos. 32, 37, 38, 44, are **OVERRULED**.

**IT IS SO ORDERED.**

DATED:    March 28, 2022

_____
**HON. LINDA LOPEZ**
United States District Judge