1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| ROBERT L. PARKER,<br><br>        Plaintiff,<br><br>v.<br><br>VINCE DEQUITO; JONATHAN<br>BECERRA; and CARRIE HOGAN,<br><br>        Defendants. | Case No.: 20cv661-LL-JLB<br><br>**AMENDED ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT**<br><br>**[ECF No. 30]** |

18
19
20
21
22
23
24
25
26
27
28

Plaintiff Robert L. Parker ("Plaintiff" or "Parker"), proceeding pro se, brought this civil rights action against Sergeant Vince Dequito, Detective Jonathan Becerra, and Officer Carrie Hogan ("Defendants" or "the officers"), who are all current or former members of the San Diego State University Police Department ("SDSUPD"). The Court previously granted Defendants' Motion for Summary Judgment, [ECF No. 47], after which Plaintiff filed a Motion to Alter or Amend the Court's ruling, [ECF No. 49]. As a result of that motion, and to correct errors in the Court's previous order, including the spelling of one of the Defendant's names, this Amended Order supersedes and replaces the Court's previous order at ECF No. 47. For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 30] is again **GRANTED**.

## I.    BACKGROUND

### A.    Plaintiff's Account

According to Plaintiff, on March 4, 2019, at approximately 7:00 p.m., he began exercising in the San Diego State University Aztec Recreation Center gym ("the gym"). Compl. ¶ 11. Around 7:30 p.m., he began using a treadmill and noticed a small towel in the cup holder. *Id.* ¶ 13. Shortly after he started using the treadmill, an unknown adult male "challenged" him by "stating that the white towel marked the treadmill as reserved for the exclusive use of [the other man]." *Id.* ¶ 14. The gym has a policy forbidding the "reservation" of certain exercise equipment in such a manner. *Id.* ¶ 15. Plaintiff ignored the man and continued exercising on the treadmill. *Id.* The man became "incensed and irrational," yelled, turned off the treadmill, and removed Plaintiff's headphones. *Id.* ¶ 16. Plaintiff turned to face the man, who then "verbally berated" him. *Id.* Gym staff arrived, and Plaintiff departed the gym and remained outside for about 15 minutes, then returned "peacefully" to continue his workout. *Id.* ¶ 17.

Upon continuing his workout, Plaintiff intentionally attracted the attention of a gym employee "intending to display peaceful intentions and that all was well." *Id.* ¶ 18. The staff member spoke quickly to another staff member, who went to a phone on the wall. *Id.* ¶ 19. Plaintiff "believed that the incident had been misinterpreted, suspected that the police would be summoned again,[1] and that [he] would be falsely accused." *Id.* Plaintiff departed the gym again, but was met near the gym exit by Officer Hogan. *Id.* ¶¶ 19-20. Plaintiff said, "I'm recording you." *Id.* ¶ 20. After two minutes, Detective Becerra and Sergeant Dequito arrived. *Id.* Officer Hogan said, "he's refusing to talk to me." *Id.* After a "contentious" two minutes in which Plaintiff "lawfully asserted his right to remain silent and lawfully refused to give his name," Sergeant Dequito said "[i]f you're gonna play this fifth amendment game, we're not gonna know." *Id.* Sergeant Dequito threatened to arrest Plaintiff and

---

[1] As discussed below, the police previously responded to the gym, but Plaintiff left before their arrival.

charge him with violating Cal. Pen. Code § 148(a) if he didn't provide his name. *Id.* Plaintiff complied, stating, "my name is Robert Parker. I am a member here." *Id.* ¶ 22. Detective Becerra "continued to berate" Plaintiff and "raised his pointing finger in an escalating action and advanced toward" Plaintiff. *Id.* Plaintiff "feared physical harm and reacted emotionally." *Id.* Becerra and Dequito laughed and "continued to badger" him. Sergeant Dequito threatened him by stating "did he not give his name? Then arrest him."[2] *Id.* Detective Becerra also threatened Plaintiff with revoking his gym membership. *Id.* Sergeant Dequito stated, "one more time dude. Just one more time dude and you're under arrest." *Id.* Plaintiff spelled out his last name loudly and slowly. *Id.* Officer Hogan said, "I don't have a victim." *Id.* Detective Becerra then asked Plaintiff for his date of birth, to which Plaintiff responded, "am I required to give you my date of birth?" *Id.* Sergeant Dequito said "yes" and then arrested him. *Id.*

Plaintiff was handcuffed and his phone was taken away, but it was still recording. *Id.* About six minutes into the encounter, Officer Hogan said "you didn't need to escalate this." *Id.* ¶ 24. Officer Hogan subsequently stated in her police report that she arrested Plaintiff after attempting to investigate for about 20 minutes. *Id.* ¶ 25. Thirty minutes after being arrested, Plaintiff was unhandcuffed and cited for violating Cal. Pen. Code § 148(a)(1). *Id.* ¶ 34. Sergeant Dequito said, "this dude he's like drunk or something." *Id.* ¶ 35. Another officer said, "he doesn't even know what he's saying," and also said she smelled alcohol and accused Plaintiff of being drunk. *Id.* Detective Becerra threatened that he was going to follow Plaintiff to his car and arrest him when he got in. *Id.* Plaintiff was released 35 minutes after the initial encounter and 29 minutes after being arrested. *Id.* ¶ 37. Plaintiff alleges that while Detective Becerra was in the gym "following up," he searched Plaintiff's belongings, and failed to return a padlock and $80 in cash. *Id.* ¶ 36.

---

[2] As discussed below, Plaintiff did eventually provide his name to the officers.

In support of his opposition to the instant motion, Plaintiff provided the Court and Defendants with the audio recording taken with his phone ("the audio recording") which apparently captures most, if not all, of his verbal exchanges with the officers even if some are unintelligible.[3] ECF No. 34.

### B. Defendants' Account

On March 4, 2019, the SDSUPD received two calls for police assistance from the gym. Detective Becerra responded to the first call reporting an "altercation" between two gym members, but when he arrived, staff reported that both parties had left, so he cleared the call and left. ECF No. 30-1 at 9 ¶ 2. Officer Hogan responded to the second call, which was in response to a "panic alarm" activated by gym staff. *Id.* at 5 ¶ 2. According to Officer Hogan, she was advised by dispatch the alarm was related to the early call regarding the "altercation." *Id.* One of the gym employees, identified as "TL," reported that Plaintiff returned, and when she attempted to ask Plaintiff questions about the altercation, Plaintiff "asked her to go outside." *Id.* The employees said to Officer Hogan, "it had been reported that the two members had hit each other." *Id.* at 5 ¶ 3. Officer Hogan states:

> Before I could speak further with TL, Parker arrived with a cell phone in his hand, said he was recording me, and asked what I wanted to talk about. I told him I was also recording and was investigating a reported fight. Parker said he was asserting his Fifth Amendment right not to speak. I asked Parker what was going on. Parker became angry, argumentative, and agitated. He again stated he asserted his Fifth Amendment right, asked if I knew what that meant, and said it meant that I could no longer question him. I advised Parker that I could question him because he was not under arrest and was being detained. He again asserted his Fifth Amendment right.
>
> I told Parker to stand by while we waited for my partner to arrive. Parker asserted that he was not being detained and started to leave. I repeated that he was being detained. Parker then took an aggressive step toward me, leaned over me, and asked why he was being detained. I estimated Parker's height at 6' 2" and his weight at approximately 200 pounds. My build is 5' 7" and 140

---

[3] As noted below, the audio recording is part of the record in the instant motion. *See* ECF Nos. 39, 40.

pounds. I instructed Parker to back up. He did and again asked why he was being detained. I told him I was conducting an investigation. Parker again stepped toward me in an aggressive manner and I again ordered him to back away. Based on my training and experience, I felt that Parker was taking a fighting stance with me and I felt physically threatened by his body language and behavior.

Parker asked again why he was being detained. I told him I was investigating a reported fight and he responded that there was no fight. I told him that is what I was investigating. Parker then turned his phone toward TL and asked if she saw a fight or if there was a fight, or words to that effect. She said she was told by multiple people that there had been a fight. Parker again asserted his Fifth Amendment claim and asked if he was being detained. He then questioned me about whether I believed he had committed a crime. I advised him I was investigating.

Parker started to leave a second time and said he was going to leave unless I told him he was being detained. I repeated that he was being detained. Officer Becerra arrived. I filled him in and asked that he stand by with Parker while I investigated. Sergeant Dequito arrived with Officer Becerra. Parker remained angry, argumentative, and agitated throughout our exchange.

*Id.* at 5-6 ¶¶ 3-6.

According to Detective Becerra, when he arrived for the second time, he was advised that "one of the parties to the altercation had returned (later identified as Parker) and asked 92106[a gym] employee to go outside, which the employee interpreted as a threat and caused her to activate the panic alarm." ECF No. 30-1 at 9 ¶ 3. Plaintiff said he had asserted his Fifth Amendment rights. *Id.* "Officer Hogan reported that she detained Parker, was trying to figure out what was going on, that Parker was not cooperating, and asked that I stand by with Parker while she continued to investigate." *Id.* Detective Becerra twice asked Plaintiff for identification, but he asserted his right to remain silent. *Id.* ¶ 4. Detective Becerra states:

I informed Parker that we received word there was a disturbance with another individual that became physical and that assault charges could be involved. I asked him if he thought that was sufficient reason for detention or arrest. Parker's response was "except there wasn't any." I told Parker that is what we were investigating. I again asked for identification.

*Id.* ¶ 5. Detective Becerra pointed his finger at Plaintiff, and Plaintiff "became hysterical and screamed not to 'push him.'" *Id.* at 10 ¶ 6. Plaintiff provided his name but "balked" at providing his birth date. *Id.* Detective Becerra states, "[b]ased on my interaction with Parker and my training and experience, I concluded that Parker would not meaningfully cooperate and was instead delaying and obstructing our investigation." *Id.*

According to Sergeant Dequito, the supervisor on the scene, he arrived at the same time as Officer Becerra. *Id.* at 12 ¶ 2. In addition to repeating much of Officer Becerra's account, Sergeant Dequito states:

> Parker and Officer Becerra engaged in a discussion about producing identification and the basis for his detention. Parker was not cooperative. He repeatedly invoked his Fifth Amendment rights while at the same time offering self-serving pieces of information, such as denying that there was an assault committed during the altercation and that another member caused a disturbance. I referred to Parker's invocation of the Fifth Amendment as a "game" due to the fact that Parker made this reference repeatedly. I was referring to the fact that the Fifth Amendment generally does not apply to detentions and Parker was inappropriately using the right to delay and obstruct the investigation. At one point Parker became hysterical and screamed at Officer Becerra.

*Id.* ¶ 4.

While Dequito and Becerra were with Plaintiff, Officer Hogan returned to the gym employee who said that "witnesses reported that [a gym member] and Parker got into an argument over use of a treadmill and that the argument led to an exchange of [a] physical fight," but the employee did not personally witness the fight. *Id.* at 6 ¶ 7. The employee also said that "she activated the panic alarm because Parker had returned (having left after the altercation) and asked her to go outside when she tried to question him about the incident" and that "this was unsafe." *Id.* Officer Hogan also states that "[a]n eyewitness said that Parker slapped [the other gym member] after he pushed Parker," but the witness refused to identify herself. *Id.* Officer Hogan was unable to reach the other gym member by phone, and the dispatcher advised her that the other gym member had not made a report. *Id.*

Officer Hogan then "advised Sergeant Dequito that [she] did not have a victim of a crime so would document a violation of Cal. Penal Code § 415 (disturbing the peace) and release Parker." *Id.* at 7 ¶ 8. According to Officer Hogan, "Parker was escorted outside where he was held in handcuffs until the arrest paperwork was completed and Officer Becerra retrieved Parker's personal belongings from his locker." *Id.* at 7 ¶ 9. According to Detective Becerra, "Parker was placed in handcuffs and escorted outside, where he stayed until the cite-and-release paperwork was completed and his personal belongings were retrieved from ARC." *Id.* at 10 ¶ 7. According to Sergeant Dequito, "[t]he arrest was because of the totality of circumstances, including the nature of the call for police assistance (possible assault) and his uncooperative, aggressive, and belligerent conduct toward Officers Hogan and Becerra, which delayed and obstructed the officers' efforts to perform their duty to investigate the incident." *Id.* at 12-13 ¶ 5. Plaintiff was cited for violating Cal. Penal Code § 148(a)(l) (resisting, delaying, or obstructing a police investigation) and released. *Id.* at 7 ¶ 9. He was also advised to stay off campus for seven days pursuant to Cal. Penal Code § 626.6. *Id.*

## C.  Procedural History

On April 6, 2020, Plaintiff filed his Complaint against the SDSUPD, the Police Chief, and four individual officers. On June 23, 2020, the parties agreed to dismiss the SDSUPD, the Police Chief, and one of the individual officers, and to dismiss three of the claims. ECF Nos. 5, 7. The above Defendants filed an Answer. ECF No. 6. On September 25, 2020, the case was transferred to Judge Robinson. ECF No. 16. On May 17, 2021, Defendants filed the instant motion. ECF No. 30. On October 6, 2021, Plaintiff filed his opposition. ECF No. 32. On January 4, 2022, the case was transferred from Judge Robinson to the below signed district judge. ECF No. 41. On January 19, 2022, Defendants submitted their reply brief. ECF No. 43. Defendants also submitted responses to Plaintiff's objections. ECF Nos. 31, 44.

## II.  LEGAL STANDARD

Where a moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in the light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The moving party may make this showing by identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If a moving party carries its burden of showing the absence of evidence as to an essential element of the opposing party's case (e.g., a genuine issue of material fact), "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one." *Oracle*, 627 F.3d at 387. The party opposing the motion for summary judgment "must show more than the mere existence of a scintilla of evidence" by coming forward "with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* The nonmoving party must go beyond the pleadings and designate facts showing a genuine issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). It can do this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor. Fed. R. Civ. P. 56(c).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), and will draw inferences from the facts in the light most favorable to the nonmoving party, *see Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion seeking summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). Further, if the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587.

## III.   DISCUSSION

### A.   Evidentiary Objections

As an initial matter, both parties make evidentiary objections with respect to the instant motion. As noted above, on October 7, 2021, Plaintiff filed an ex parte application for, inter alia, leave to file an audio recording in support of his opposition. ECF No. 34 at 3. Construing the request as one to file the audio recording non-electronically, Judge Robinson allowed the Defendants to file objections, to which Plaintiff responded, [*see* ECF Nos. 36, 37], after which Judge Robinson granted Plaintiff's request, [ECF No. 39]. On December 13, 2021, Plaintiff submitted the audio recording to the Court on a thumb drive. ECF No. 40. Defendants have not subsequently objected to the consideration of the audio recording in deciding the instant motion, and do not dispute they were provided a copy. Moreover, Defendants twice cite Plaintiff's transcription of the audio recording in support of their own reply, [*see* ECF No. at 7-8 (citing "Arrest Audo Tr.")], and argue in their opposition to Plaintiff's objections that Plaintiff's own recording is "relevant" and not precluded by the best evidence rule. *See* ECF No. 44 at 2. To the extent Defendants' objections were not already overruled by Judge Robinson in his previous order, they are **OVERRULED** as waived, or alternatively, because the audio recording could be authenticated at trial.

In his opposition, Plaintiff also makes numerous objections. *See* ECF No. 32. First, Plaintiff objects under Rule 401 to "the usage of the sound of Parker's voice (as opposed

to the words themselves) as evidence of the sound experienced by Defendants[.]" *Id.* at 4 ¶ 1. The objection is **OVERRULED** as moot because the tone and volume of Plaintiff's voice in the recording is not a factor in the Court's decision on the instant motion. Plaintiff also objects on the ground that the body worn camera video is the best evidence under Rule 1002. The objection is **OVERRULED** because the audio recording it is not being offered to prove the content of some other recording. Second, Plaintiff objects to his deposition testimony being considered because the procedural rules were not followed "indicating possible improper training/certification of reporter." *Id.* ¶ 2. The objection is **OVERRULED** because Plaintiff does not indicate how any procedural rules were violated, and if so, why consideration of his testimony would be improper in deciding the instant motion. Third, Plaintiff objects to references in Defendants' materials to gym employee's statements on hearsay grounds. *Id.* ¶ 3. The objection is **OVERRULED** because the statements are being offered to prove the effect on the listener, not the truth of the matter asserted in the statements. Plaintiff's objections to references to statements by the dispatcher, *id.* ¶ 5, are **OVERRULED** for the same reason. Finally, Plaintiff's remaining objections, most if not all of which relate to Defendants' purported expert report regarding the existence of probable cause, are **OVERRULED** as moot because the expert report is not a factor in the Court's decision on the instant motion.

### B.   Section 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983 and the Fourth Amendment for unlawful detention, arrest without probable cause, and false imprisonment. Section 1983 provides that any person who, under the color of state law, deprives any citizen of constitutional or statutory rights "shall be liable to the party injured in an action at law." The statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

"Qualified immunity protects government officials from liability for civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which

a reasonable person would have known.'" *Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In cases where the defense of qualified immunity is raised, the plaintiff must show that "(1) the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "These inquiries are questions of law." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (citation omitted). "The judges of the district courts and the courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotations omitted). The inquiry requires courts to determine if "the violative nature of particular conduct is clearly established," *id.* at 742, and therefore "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Clearly established law" does not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Plaintiff alleges Defendants violated his Fourth Amendment rights by detaining and arresting him. Compl. ¶¶ 44, 52. In order to prove Defendants deprived him of his right to be free from unreasonable seizures, Plaintiff must show: (1) he was seized; (2) the officers seized him intentionally; and (3) the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The parties dispute whether Plaintiff's detention and arrest were reasonable.[4]

---

[4] Defendants do not dispute they were acting under color of state law, or that Plaintiff was seized when he was detained and arrested.

### 1.   Unlawful Detention

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Whether reasonable suspicion exists depends on "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 124 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges (1) there was no reasonable suspicion for his detention, and (2) he was detained past the point when Defendants determined there was no reasonable suspicion. Compl. ¶¶ 44-49. Defendants argue "[t]hey had reasonable suspicion that Parker committed a crime in the cardio room, disturbed the peace, and/or threatened TL based on the nature of [the gym's] first call to the police (physical altercation), [the gym's] panic alarm, and TL's identification of Parker as an aggressor." ECF No. 30 at 20.

Here, Plaintiff does not genuinely dispute that: (1) some form of altercation occurred between Plaintiff and another gym patron regarding the use of a treadmill; (2) the altercation resulted in a call to the police, but Plaintiff left the gym, and Detective Becerra could not locate him; (3) after Becerra left, Plaintiff returned to the gym and communicated in some way with gym staff, after which the staff triggered the "panic" alarm; and (4) the dispatcher told Officer Hogan the alarm was related to the earlier altercation. Plaintiff also does not dispute, and the audio recording confirms, that after Officer Hogan arrived,

Plaintiff approached her and said "I finished my workout. I'm recording you. What do you want to talk about?" Officer Hogan responded, "I'm trying to figure out what's going on. I was called here because there was a fight," to which Plaintiff responded, "I'm asserting my Fifth Amendment rights to not speak." [5] These facts constitute reasonable grounds for Officer Hogan to detain Plaintiff on the suspicion that criminal activity was afoot and Plaintiff was involved, whether it be fighting, disturbing the peace, or behaving in a threatening manner.

As noted above, Plaintiff argues the information given to Officer Hogan was hearsay. ECF No. 32 at 4. However, reasonable suspicion can be, and often is, based on hearsay. *See Raiser v. Selnick*, No. ED CV 15-00310 RGK (RAO), 2017 WL 2271566, at *1 (C.D. Cal. May 23, 2017) (rejecting the plaintiff's argument that evidence supporting reasonable suspicion was hearsay where the officer was aware of at least one prior call and information relayed by a dispatcher); *United States v. King*, No. C 10-00455 WHA, 2011 WL 9315, at *5 (N.D. Cal. Jan. 3, 2011) ("[A]s probable cause may be found based on hearsay from informants, reasonable suspicion may be found based on hearsay as well.").

While Plaintiff denies being in a physical altercation and threatening gym staff and Officer Hogan, these facts are not material to whether Officer Hogan's detention was reasonable. There is also no indication that Plaintiff was detained longer than necessary given that until shortly before his arrest he refused to provide his name or answer any questions . *See Vanegas v. City of Pasadena*, No. 2:20-cv-07845-SVW-AGR, 2021 WL 1917126, at *4 (C.D. Cal. Apr. 13, 2021) (finding that a demand for identification did not

---

[5] As pointed out by Defendants, Plaintiff does not have a right to anticipatorily invoke *Miranda* rights outside of custodial interrogation. *See McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'[.]"). Moreover, a *Miranda* violation would only preclude Plaintiff's statements from being used against him at trial. *Chavez v. Martinez*, 538 U.S. 760, 767-70 (2003). It would not serve as the basis for a § 1983 claim. *Chavez v. Robinson*, 12 F.4th 978, 989 (9th Cir. 2021). Regardless, in his Complaint, Plaintiff does not allege a violation of his Fifth or Sixth Amendment rights.

unreasonably prolong the detention because the "[p]laintiff's identity had to be ascertained in order to determine whether [p]laintiff was the subject of the 911 call").

Based on the above, Defendants have shown that Plaintiff cannot show a lack of reasonable suspicion for the detention or the length of the detention in violation of Plaintiff's constitutional rights. Defendants are therefore entitled to qualified immunity on Plaintiff's unlawful detention claim. *See Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) ("If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity.") (citation omitted). Also, as discussed below, Plaintiff makes no attempt at showing that even if there was a constitutional violation, that the right at issue was clearly established.

### 2.    Unlawful Arrest

Defendants also argue they are entitled to summary judgment on Plaintiff's unlawful arrest claim because Plaintiff cannot show a lack of probable cause. ECF No. 30 at 21. "An arrest must be supported by probable cause to believe that the person being arrested has committed a crime." *Hernandez v. Skinner*, 969 F.3d 930, 938 (9th Cir. 2020) (citations omitted). Probable cause "must be based on 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused has committed or was committing an offense.'" *Id.* (citations omitted). "The police need not know, however, precisely what offense has been committed." *United States v. Price*, 980 F.3d 1211, 1225 (9th Cir. 2020).

The parties do not dispute that Plaintiff was arrested for violating Cal. Penal Code § 148(a)(1). An arrest for violating § 148(a)(1) requires probable cause to believe: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002). The statute is not limited to flight or forcible interference with an officer's activities. *Id.* at 1329-30 (citing *People v. Quiroga*, 16 Cal. App. 4th 961 (1993)). The parties dispute whether Defendants had probable cause that Plaintiff resisted, delayed, or obstructed the

officers.[6]

In support of their probable cause argument, Defendants point to multiple material facts. However, all of these facts are genuinely disputed. First, Defendants claim that Plaintiff "twice advanced on one of the officers, one time leaning over her, and both times not backing away until ordered to do so." ECF No. 30 at 11. As noted above, in her declaration, Officer Hogan states that after telling Plaintiff he was being detained, he "then took an aggressive step toward me, leaned over me, and asked why he was being detained," and after being told to back up, he "again stepped toward me in an aggressive manner and I again ordered him to back away." ECF No. 30-1 at 5-6 ¶¶ 3-4.

In his opposition, however, Plaintiff claims that he was attempting to distance himself from Officer Hogan, and that it was Officer Hogan who "closed the distance" between them. ECF No. 32 at 10 ¶ 13. Plaintiff further states that "[h]e rejects as untrue Hogan's statements 'Parker then took an aggressive step toward me, leaned over me' and 'Parker again stepped toward me in an aggressive manner.' Parker did not do any of those things. Parker was not aggressive, and Parker did not present as a threat. . . . Parker did not lean over Hogan." Id. ¶¶ 15, 17. Although the audio recording confirms that Officer Hogan said "stop," "back it up," and "back up," these commands do not necessarily confirm, as a matter of law, that Plaintiff took aggressive steps toward Officer Hogan or leaned over her. When viewed in the light most favorable to Plaintiff, Officer Hogan could have been ordering Plaintiff not to leave.

Second, and relatedly, Defendants argue that Plaintiff "twice started to leave the detention." ECF No. 30 at 10. Plaintiff does not dispute that he initially attempted to leave, but claims he "understood that he was free to leave" because Officer Hogan made a hand motion towards the exit as he approached her. ECF No. 32 at 8 ¶ 3. Plaintiff also claims he

---

[6] The parties do not dispute that Defendants were performing their duties or that Plaintiff knew they were police officers.

did not initially hear being told that he was detained.[7] *Id.* at 9 ¶ 9. Again, the audio recording does not necessarily contradict Plaintiff's account so that no reasonable jury could believe him. The audio recording also supports the fact that after being told a second time he was being detained, Plaintiff did not attempt to leave.

Third, Defendants argue that Plaintiff "interrogated the [gym employee] who had activated the panic alarm before the police could complete their interview of her[.]" ECF No. 30 at 10. Defendants claim that "Officer Hogan had just started speaking with TL when Parker pointed his cell phone at TL and ask if she personally witnessed the altercation. The purpose clearly was to intimidate TL and preempt Officer Hogan's interview." *Id.* at 24. However, the audio recording does not necessarily support Defendants' suggestion that Plaintiff initially approached the employee in order to intimidate her and preempt Officer Hogan's interview. Rather, the audio recording more closely supports Plaintiff's account that he initiated the interaction by stating "I finished my workout. I'm recording you. What do you want to talk about?" Defendants do not dispute that it was Officer Hogan who then replied, "I'm trying to figure out what's going on. I was called here because there was a fight." *See* ECF No. 43 at 7:17-18.

Officer Hogan's declaration also does not support Defendants' argument that Plaintiff pointed his cell phone at the employee for the purpose of intimidating her. In her declaration, Officer Hogan states "I began to speak with TL. She told me it had been reported that the two members had hit each other. Before I could speak further with TL,

---

[7] Plaintiff supports these statements with an unsigned declaration. ECF No. 33. Plaintiff does, however, submit a verified Complaint which repeats most, if not all, of the material factual arguments in Plaintiff's opposition. *See* Compl. at 20. Plaintiff also previously submitted signed declarations in support of other arguments. *See* ECF No. 34. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court will not rely on Plaintiff's failure to sign this particular declaration because there is no indication he would not make his factual assertions under oath.

[Plaintiff] arrived with a cell phone in his hand, said he was recording *me*, and asked what *I* wanted to talk about."[8] ECF No. 30-1 ¶ 3 (emphasis added).

Plaintiff does not dispute that while he was subsequently detained he asked the employee "did you think there was a fight" to which she responded, "I was told by multiple people there was." *Id.* at 11-12 ¶ 24. Plaintiff admits to then asking the employee again if there was a fight, to which she allegedly just shrugged. *Id.* However, the audio recording suggests that at the time Plaintiff asked the employee these two questions, Officer Hogan was attempting to interview Plaintiff, not the employee. It is also not clear why asking these two questions interfered with the officers' investigation.[9] Plaintiff claims he was twelve feet away from the employee and they were separated by a service counter. *Id.* ¶¶ 24-25.

Fourth, Defendants argue that Plaintiff delayed and obstructed their investigation because he "refused to answer questions while at the same time peppering the officers with questions about the investigation." ECF No. 30 at 10. Defendants concede, however, that Plaintiff was free to refuse to answer questions, and was not directed to refrain from asking questions.

Finally, Defendants argue that "Parker was agitated throughout the encounter, and was often aggressive and belligerent." ECF No. 30 at 10. While Defendants argue that "a detainee's failure to identify him or herself may, if combined with belligerent conduct, support a violation of § 148," [ECF No. 30 at 23], Defendants cite no case supporting this

---

[8] Noticeably, in their reply, Defendants apparently abandon their argument that Plaintiff approached the employee while she was being interviewed in order to intimidate the witness and preempt Officer Hogan's interview. Instead, Defendants argue that Plaintiff merely "interrupted" Officer Hogan's interview. ECF No. 43 at 4. In contrast, Plaintiff claims that "Hogan was looking in Parker's direction and not talking to anybody as Parker approached Hogan, and Parker did not even see [TL]." ECF No. 32 at 8. The audio recording does not indicate what Officer Hogan was doing when Plaintiff approached her.

[9] It is also not clear why the "nature" of a call about a possible fight at a gym supports Plaintiff's arrests for obstructing or delaying Defendants' investigation.

argument.[10] Instead, Defendants cite *People v. Lopez*, 119 Cal. App. 4th 132 (2004), in which the court found it was lawful to arrest the defendant for violating § 148 because, while lawfully detained, he was "belligerent," refused to give his name, refused to keep his hands visible, did not comply with an order to sit down, refused to submit to a pat down, and cursed at the arresting officer. Here, the audio recording confirms that Plaintiff eventually provided his name, complied with the officers' orders not to leave, and clearly stated "I will not get physical with you."[11]

Based on the above, Defendants have not shown the absence of a genuine dispute of material fact supporting probable cause for Plaintiff's arrest under § 148(a)(1). Moreover, resolution of most of these material factual issues – including whether Plaintiff took an "aggressive step," tried to leave, or interfered with Officer Hogan's witness interview – clearly require credibility determinations. *See Soremekun*, 509 F.3d at 984. Accordingly, Defendants are not entitled to summary judgment as to whether the arrest violated Plaintiff's constitutional rights.

### 3.    Qualified Immunity

Defendants argue that regardless of any constitutional violation they are entitled to qualified immunity on all of Plaintiff's § 1983 claims because Plaintiff has not shown that any right at issue was clearly established. ECF No. 30 at 28. As noted above, "[s]tate

---

[10] Defendants also provide no support that their "many years of training and experience" and their "police practices expert" report are significant factors supporting the reasonableness of the detention or arrest. ECF No. 30 at 20-21.

[11] It may be that refusal to produce identification during a lawful investigative detention gave the officers probable cause to arrest Plaintiff for violating § 148(a)(1). *See, e.g.*, *Vanegas*, 2021 WL 1917126, at *4. Certainly, by refusing to initially give his name and answer questions, Plaintiff "delayed" the investigation. Here, however, Defendants specifically deny arresting Plaintiff based solely on the refusal to give his name, [*see* ECF No. 30 at 23], and Defendants cite no case besides *Lopez* in which a refusal to identify oneself constitutes probable cause for arrest if combined with other factors. Moreover, as Defendants acknowledge, Plaintiff eventually identified himself.

officials have qualified immunity from civil liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Where the defense of qualified immunity is raised, the plaintiff must show that the right was clearly established at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 735. "If the plaintiff fails to carry his burden at any step, qualified immunity should be granted to the defendant." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011).

Plaintiff devotes his opposition to denying that it is his burden to show that the right at issue was clearly established.[12] ECF No. 32 at 41-43. Plaintiff states he "has no obligation to identify any law beyond *Martinelli* [*v. City of Beaumont*, 820 F.2d 1491 (9th Cir. 1987)], which makes clear that an arrest for failure to identify is an unlawful seizure under the Fourth Amendment." *Id.* at 43. However, in *Martinelli* the officers arrested the plaintiff under § 148(a)(1) solely for failing to identify herself after a lawful *Terry* stop. 820 F.2d at 1492. As discussed above, the officers here specifically deny doing so. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (distinguishing *Martinelli* because "the only possible basis for probable cause [for the arrest in *Martinelli*] was the defendant's refusal to produce identification"). While the other reasons for arresting Plaintiff are not strong enough to show, as a matter of law, that the officers had probable cause, they are not so weak that they show that Plaintiff's initial refusal to identify himself was the only possible basis for arresting him under § 148(a)(1).

---

[12] Plaintiff argues "Defendants present no reason for arrest to which Parker may respond with clearly established legal precedent. Defendants' strategy here is improper. Defendants are asking Parker 'Tell us what law would have shown us not to arrest you,' while Parker is waiting for an answer to 'First, tell me why you arrested me.'" ECF No. 32 at 42.

1
2
3
4
5
6
7
8
9
10

Moreover, it is not clear that *Martinelli* actually held that police may never arrest persons under § 148(a)(1) for refusing to identify themselves.[13] *See Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186-87 (2004) ("Although it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop, it has been an open question whether the suspect can be arrested and prosecuted for refusal to answer."); *United States v. Landeros*, 913 F.3d 862, 869 (9th Cir. 2019) ("In some circumstances, a suspect may be required to respond to an officer's request to identify herself, and may be arrested if she does not."); *Vanegas*, 2021 WL 1917126, at *5 (finding the plaintiff's "refusal to produce his identification during a lawful investigative detention gave officers probable cause to arrest him for violating Cal. Pen. Code § 148(a)(1)").[14]

11
12
13
14
15
16
17
18
19
20
21

Accordingly, even if Plaintiff had shown he was arrested for refusing to initially identify himself, Plaintiff has not met his burden of showing that right was clearly established at the time of his arrest. Defendants are therefore entitled to qualified immunity against Plaintiff's unlawful arrest claim under § 1983. *See Stacker v. Johnson*, No. 2:16-cv-2913-GHW, 2019 WL 4991740, at *5 (E.D. Cal. Oct. 8, 2019) (accepting qualified immunity defense based on pro se plaintiffs' "wholesale failure to carry their burden of identifying clearly established law"); *see also Ashcroft*, 563 U.S. at 742 ("The general proposition . . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *Bias*, 508 F.3d at 1219 ("A district court lacks the power to act as a party's lawyer, even for pro se litigants.").

22
23
24
25
26
27
28

[13] *Martinelli* held that a criminal defendant arrested solely for refusing to identify herself after a lawful *Terry* stop was prejudiced by a jury instruction that "Section 148 was constitutional as applied." 820 F.2d at 1494.

[14] The *Vanegas* case is currently pending appeal. *See Vanegas v. City of Pasadena*, No. 21-55478 (9th Cir. May 10, 2021).

### 4.      False Imprisonment

Plaintiff also brings a claim for false imprisonment under § 1983. Compl. at 12. Plaintiff alleges "Defendants unlawfully detained Plaintiff for an unreasonable period of time after they knew or should have known that he had committed no crimes." *Id.* ¶ 60. Defendants argue that Plaintiff cannot bring a false imprisonment claim under § 1983 under *Baker*, in which the Court held "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." 443 U.S. at 146.

In his opposition, Plaintiff does not dispute that his claim for false imprisonment under § 1983 is dependent on his claims for unlawful arrest and detention.[15] ECF No. 32 at 41. "A claim for wrongful detention (false imprisonment) absent a cognizable claim for wrongful arrest will not ordinarily state an independent claim under Section 1983." *Williams v. City of Oakland*, No. 17-cv-05238-YGR, 2018 WL 3972323, at *3 n.8 (N.D. Cal. Aug. 20, 2018) (citing *Baker*, 443 U.S. at 142-45). As discussed above, Plaintiff does not bring a cognizable claim for unlawful detention or arrest, including whether he was detained or arrested for an unnecessarily long period. Defendants have identified facts that Plaintiff was detained no longer than necessary to determine his identity and gather basic facts, and was not arrested any longer than necessary to cite him for violating § 148(a)(1). Other than those facts upon which Plaintiff relies to support his unlawful detention and arrest claims, Plaintiff has not identified any facts to the contrary. Accordingly, Defendants are entitled to summary judgment on Plaintiff's false imprisonment claim under § 1983.

### C.      Injunctive Relief

Plaintiff also brings a claim for injunctive relief with respect to SDSUPD's alleged "misapplication" of Cal. Penal Code § 626.6, which prohibits a person who has been directed to leave a school campus from returning within seven days. Compl. ¶ 113; ECF

---

[15] In Plaintiff's Motion to Alter or Amend, he also does not dispute the dismissal of his false imprisonment claim. *See* ECF No. 49.

No. 32 at 45. The parties agree that after Plaintiff's initial arrest he was arrested again, this time under § 626.6. ECF No. 30 at 31-32. Plaintiff alleges he was arrested under § 626.6 "in retaliation for his victory against SDSUPD in this false arrest case and for the filing of Internal Affairs complaints against officers." Compl. ¶ 113. Plaintiff also apparently seeks an injunction preventing "unlawful harassment against himself or other citizens." *Id.* ¶ 114. Defendants argue they are entitled to summary judgment as to Plaintiff's claim for injunctive relief because he cannot show a likelihood of success as to the merits of his claim, and because of the *Younger* doctrine. ECF No. 43 at 10.

"An injunction properly issues only where the right to be protected is clear, injury is impending and so immediately likely as only to be avoided by issuance of the injunction." *E. Bay Mun. Util. Dist. v. Dept. of Forestry & Fire Prot.*, 43 Cal. App. 4th 1113, 1126 (1996). Furthermore, "[a] complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of." *E.H. Renzel Co. v. Warehousemen's Union*, 16 Cal. 2d 369, 373 (1940); *see also Benn v. Allstate Ins. Co.*, No. 5:21cv1584 JFW SPX, 2021 WL 5049101, at *4 (C.D. Cal. Oct. 29, 2021) (dismissing claim for injunctive relief where plaintiff failed to allege with specificity any ongoing conduct).

Here, the issue of Plaintiff's arrest under § 626.6 is not properly before the Court. Moreover, even when interpreted liberally, Plaintiff's request does not provide specific terms in reasonable detail, such as the duration, ongoing conduct, or the acts to be restrained. *See* Fed. R. Civ. P. 65(d)(1). Requesting the court to enjoin "unlawful harassment" or the "misapplication" of the law is insufficient. *See Albers v. Paul Revere Ins. Grp.*, No. 20-cv-08674 NC, 2021 WL 6622294, at *5 (N.D. Cal. Dec. 23, 2021) (declining to enjoin "unfair, unlawful, or deceptive business practices"). Additionally, granting Plaintiff's request would appear to interfere with state court proceedings. *See Younger v. Harris*, 401 U.S. 37, 46 (1971) (noting "fundamental policy against federal interference with state criminal prosecutions"). Finally, Plaintiff has not shown, or attempted to show, irreparable harm or the likelihood of success on the merits. *See* Fed. R.

Civ. P. 65; *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Accordingly, to the extent the claim is even before the Court, Defendants are entitled to summary judgment on Plaintiff's claim for injunctive relief.

### 5.      State Law Claims

Plaintiff also brings state law claims for violation of the Bane Act, Cal. Civ. Code § 52.1, as well as for negligence. However, a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotation marks omitted). Because Defendants are entitled to summary judgment on all of Plaintiff's federal claims, the Court, in its discretion, declines to address Plaintiff's remaining state law claims.

### F.      Plaintiff's Request to Reopen Discovery

In his opposition, Plaintiff argues the Court should reopen discovery. ECF No. 32 at 46. "District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Courts "may entertain a motion to reopen discovery or may order discovery pursuant to Federal Rule of Civil Procedure 26(b)." *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1171 (9th Cir. 2010); *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii) (vesting courts with the ability to "limit the frequency or extent of discovery" if they find that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"). "[A] district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *Cal. ex rel. Cal. Dep't of Toxic Subs. Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). The party seeking the

additional discovery "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Id.*

Here, the scheduling order required all discovery to be completed by March 5, 2021. ECF No. 13 at 1, ¶ 2. In support of his request, Plaintiff states "there was a short path to termination of this litigation: Hogan's body worn camera (BWC), detailing her conversation with [TL]. Parker should now be given access to that BWC video." ECF No. 32 at 46. The only apparent explanation Plaintiff gives for suspecting this BWC footage exists is Defendants' alleged failure to turn over another officer's BWC video that was mentioned in Defendants' expert report. *Id.* As pointed out by Defendants, however, Plaintiff was provided access to the expert before the discovery deadline closed. Moreover, during his deposition testimony, Plaintiff clearly indicated that he believed BWC video existed, [*see* ECF No. 30-1 at 21:21-22:5], but he does not now explain why he did not request it, or request it in its entirety.

Additionally, Plaintiff has not, and did not, file a noticed motion to modify the scheduling order, and has not attempted to show his diligence in seeking potentially relevant evidence, which in an unlawful arrest case would certainly include all BWC video. *See Campbell*, 138 F.3d at 779 ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[d]."); *see also Kitsap*, 314 F.3d at 1000 (finding the district court did not err by failing to grant additional discovery in response to defendants' motion for summary judgment when he "never made a Rule 56(f) motion, much less before the district court issued its summary judgment ruling").[16]

---

[16] Plaintiff also argues that while Officer Lamaku testified he was not inside the gym on the night in question, Plaintiff "now sees and recalls that Lamaku was inside, and that Lamaku had a great view of Becerra's toe-to-toe challenge of Parker." ECF No. 32 at 47. Again, however, Plaintiff does not explain why this justifies additional discovery at this late stage, and if so, what additional discovery Plaintiff seeks.

IV.   CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment [ECF No. 30] is **GRANTED**. Plaintiff's claims are **DISMISSED**. Plaintiff's Motion to Alter or Amend the Court's Rules [ECF No. 49] is **GRANTED** as consistent with this Amended Order. This Amended Order supersedes and replaces the Court's previous order at ECF No. 47 granting Defendants' Motion for Summary Judgment. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated:  June 10, 2022

Honorable Linda Lopez
United States District Judge